Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

985 F.2d 561 (Table)
**Unpublished Disposition**

**(Cite as: 985 F.2d 561, 1993 WL 5933 (6th Cir.(Ky.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby L. BUNCH, Defendant-Appellant.

No. 91-6399.

Jan. 13, 1993.

On Appeal from the United States District Court for the Western District of Kentucky, No. 90-00009; Meredith, D.J.

W.D.Ky.

AFFIRMED.

Before MERRITT, Chief Circuit Judge, and ALAN E. NORRIS and BATCHELDER, Circuit Judges.

PER CURIAM.

**\*1** Defendant, Bobby Bunch, the chief jailer for the Warren County, Kentucky Regional Jail, appeals his 18 U.S.C. § 242 conviction for beating an inmate and willfully denying him medical care.

On appeal, defendant contends that the district court erroneously excluded certain evidence, impaired his right to confront adverse witnesses, and improperly denied his motions for mistrial which were grounded upon certain comments made during the government's cross-examination and closing argument.

Finding these arguments to lack merit, we affirm defendant's conviction.

I.

In March 1989, Thomas Edward Davidson and Dennis O'Neal McAninch were being held in the Warren County jail on federal charges. Both prisoners had extensive criminal records. On March 6, 1989, Davidson and McAninch started a disturbance in the jail.

Defendant was not present when the disturbance began. Craig Runner was the shift supervisor on duty at the time and, along with taking other security precautions, he called for additional backup from state and local law enforcement agencies. When the backup officers arrived, Runner and other jail officers removed Davidson and McAninch to individual cells in the jail's "detox" section.

Davidson was placed in handcuffs and leg irons that were attached to a "belly chain," permitting him a range of hand movement of approximately six inches. According to the testimony presented at trial, he was not threatening the officers, and had no injuries at the time he was placed in the detox cell. After Runner secured Davidson and McAninch, he alerted defendant, by telephone, of the situation at the jail.

Two hours after the disturbance broke out, defendant arrived at the jail. Upon surveying the damage, he became angry and went to Davidson's cell, accompanied by Runner and several other officers. Defendant entered the cell, grabbed Davidson by the shirt collar, and shouted, "You son of a bitch you tore up my jail." He pulled Davidson out of his cell, and the two men fell to the floor in front of the cell. Six jail employees testified that defendant then straddled Davidson, who remained shackled and was lying on his back. Using his fist, defendant then struck Davidson in the face approximately ten times. According to several witnesses, Davidson was not fighting back, but was attempting to protect himself. Defendant stopped only when Runner and another officer pulled him away. Defendant admonished them to keep away from him or they would be fired.

Davidson's face was severely injured as a result of

the beating. Two officers with medical training began to treat his wounds, but defendant ordered them away and threatened to fire them if they failed to obey. He told Runner to instruct the other officers that they were to write a report stating that defendant had acted in self defense.

Following the incident, a grand jury indicted defendant of depriving prisoners Davidson and McAninch of rights under the color of law, in violation of 18 U.S.C. § 242. [FN1] A jury convicted him on the counts that involved his assault on Davidson, but acquitted him of assaulting McAninch.

## II.

**\*\*2** Defendant's first argument on appeal is that the district court erroneously refused to admit the extensive prison disciplinary records of witnesses Davidson and McAninch. Prior to the incident, Davidson had a record of eight prison disciplinary violations, including one which involved violence (assault on another inmate). The district court did admit Davidson's record of four prior felony convictions. McAninch had accumulated twenty-two disciplinary violations prior to the incident, one of which involved an assault on an inmate, and another that involved an assault on an employee/non-inmate.

The district court, in a written decision granting the government's motion to exclude the disciplinary records, discussed its reasoning:

> [T]he defendant, in his response to the motion ..., appears to rely on Federal Rule of Evidence 404(b) as allowing evidence of the prior violations ... to be presented, although he fails to cite any authority whatsoever. The defendant contends that the witnesses['] pattern of conduct presents a common scheme to be alleged as a defense to the defendant, although he does not say what this defense is.
> The Court feels that the use of this evidence for this purpose cannot be allowed. Subdivision 404(b) is inapplicable with respect to witnesses.... The defendant in the instant case wishes to introduce such prior bad act evidence to show the witnesses['] common plan or scheme in addition to the witnesses ['] state of mind. The Court cannot allow this evidence admitted for such a purpose. There is no question that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

Defendant contends that the district court erroneously concluded that Rule 404(b) does not apply to witnesses and based its ruling on that misconception. However, the language quoted above demonstrates that the court's decision was ultimately based upon Fed.R.Evid. 403. The district court, tracking the language of the Rule, stated that "[t]here is no question that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice."

Defendant presents us with no good reason why the records should have been admitted under Fed.R.Evid. 404(b) to show a "common plan or scheme" and the "state of mind" of the witnesses. It is not enough to suggest that a prior disciplinary violation for assaulting a prison inmate is probative of the witness' intent to start an altercation with defendant. Had defendant come upon the witnesses while the disturbance was taking place, one might argue that they harbored a motive or plan relevant to defendant's defense, of which the disciplinary records were probative. Such a motive could have been, for example, that they intended to provoke an altercation with the jailer that would culminate in their escape. Given that defendant arrived hours after the disturbance began, and that the witnesses were shackled when he arrived, proof that each witness previously had assaulted prison inmates hardly renders it more likely that the witnesses attacked defendant on this occasion. In view of defendant's failure to posit a compelling reason for admission of the evidence, we are unable to say that the district court erred in excluding it.

## III.

**\*\*3** Defendant next argues that the district court improperly refused to grant his motion for a mistrial. He bases this argument upon the government's delay in turning over Davidson's National Crime Information Center (NCIC) report to his lawyers until the close of trial. This report provided Davidson's criminal history.

As a result of the delay, defendant contends that he was denied a fair trial because he was unable adequately to cross-examine Davidson regarding his prior criminal record for the purpose of impeaching his credibility. However, the government earlier had provided defendant with Davidson's record of previous convictions, and defendant is unable to point to any prior conviction listed in the NCIC report, that was omitted from the list provided him by the government.

Defendant also argues that the district court erred in refusing either to provide him with Davidson's presentence report or to place the report in avowal for review by this court. Defendant cites no authority to support his contention that he is entitled to see this normally confidential document.

### IV.

Defendant's third argument is that the district court improperly denied his requests for a mistrial after the government asked a defense witness a question suggesting that he was involved in a plan to kill Davidson and McAninch.

After instructing the government to rephrase its question and conducting an *in camera ex parte* hearing to determine whether the government had a good-faith basis to ask the question, the district court denied a mistrial.

We review the district court's refusal to grant a mistrial for abuse of discretion. *United States v. Buckley,* 934 F.2d 84, 89 (6th Cir.1991). In *Buckley,* this circuit held that "if ... the trial was not rendered unfair, [we will not conclude] that the district court abused its discretion by denying [the] motion for a mistrial." *Id.* (quoting *United States v. Atisha,* 804 F.2d 920, 926-27 (6th Cir.1986), *cert. denied,* 479 U.S. 1067 (1987)).

We are unable to say that defendant did not receive a fair trial. We have reviewed the transcript of the hearing and agree with the district court that the government had a good-faith basis for asking the question. We also agree that the question put before the jury information which was relevant to show the witness' bias. Accordingly, the district court did not abuse its discretion in denying defendant's motions for a mistrial.

### V.

Finally, defendant contends that the district court erroneously overruled his objections to statements made by the government in its closing argument and rebuttal. In addition, he challenges the district court's failure to exclude certain comments to which he did not object at trial.

We have reviewed each comment in the context in which it was made and we conclude that the trial court did not err in overruling defendant's objections. With respect to those comments to which he failed to make a timely objection, we conclude that the conduct complained of, even if error, did not rise to the level of plain error.

### VI.

**\*4** The judgment of conviction is affirmed.

> FN1. This statute provides: Whoever, under color of any law .. willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if bodily injury results shall be fined under this title or imprisoned not more than ten years, or both; and if death results shall be subject to imprisonment for any term of years or for life.
> 18 U.S.C. § 242. The use of excessive force by a prison official in order to subdue a prisoner may constitute the deprivation of a right secured by the Constitution. *See Whitley v. Albers,* 475 U.S. 312, 318- 20 (1986).

985 F.2d 561 (Table), 1993 WL 5933 (6th Cir.(Ky.)), Unpublished Disposition

END OF DOCUMENT