Service: **Get by LEXSEE®**
Citation: **315 F3d 548**

*315 F.3d 548, \*; 2002 U.S. App. LEXIS 24229, \*\*;*
*2002 FED App. 0408P (6th Cir.), \*\*\*; 59 Fed. R. Serv. 3d (Callaghan) 1208*

RONALD COMBS, JASON ROBB, and GEORGE SKATZES, Plaintiffs-Appellants, v. REGINALD WILKINSON, Director of the Ohio Department of Rehabilitation and Correction, et al., Defendants-Appellees.

No. 00-4270

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

315 F.3d 548; 2002 U.S. App. LEXIS 24229; 2002 FED App. 0408P (6th Cir.); 59 Fed. R. Serv. 3d (Callaghan) 1208

March 18, 2002, Argued
November 27, 2002, Decided
November 27, 2002, Filed

**PRIOR HISTORY:** [\*\*1] Appeal from the United States District Court for the Northern District of Ohio at Cleveland. No. 99-02001. Donald C. Nugent, District Judge.

**DISPOSITION:** Reversed and remanded in part, affirmed in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff inmates challenged the judgment of the United States District Court for the Northern District of Ohio at Cleveland which dismissed their 42 U.S.C.S. § 1983 claims against defendants, supervisors and officers of the Ohio Department of Rehabilitation and Corrections (ODRC), that excessive force was used in quelling a disturbance at a prison.

**OVERVIEW:** The inmates sued defendants alleging that excessive force was used against them during a disturbance at the prison. The district court granted defendants' summary judgment on the ground that the inmates had not exhausted their administrative remedies. On appeal, the court determined that the district erred by striking the Use of Force Committee Report prepared by the ODRC from the inmates' response to defendants' summary judgment motion because it contained the findings of resulting from the committee's investigation made pursuant to Ohio Admin. Code § 5120-9-02(D) and therefore fell within Fed. R. Evid. 803(8). The district court properly granted the individual officers, the directors, and the warden summary judgment but erred by granting summary judgment for a lieutenant, as the ODRC report found that he inadequately briefed the special response team (SRT) members, failed to control the use of chemical agents, and failed to control the SRT members in the extraction of inmates, and therefore a jury could find that he implicitly authorized the use of excessive force.

**OUTCOME:** The judgment was reversed insofar as the district court struck the ODRC report and granted the lieutenant summary judgment in the inmates' use of excessive force action. The judgment was otherwise affirmed.

**CORE TERMS:** inmate, cell, excessive force, disturbance, window, extraction, use of force, summary judgment, escorted, prison, mace, commander, supervisory, hit, administrative remedies, death row, correction, unidentified, acquiesced, knowingly, prisoner, warden,

team, witnessed, chemical, floor, door, failure to exhaust, admissible, supervisor

**LexisNexis (TM) HEADNOTES - Core Concepts -** ✦ Hide Concepts

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Evidence > Procedural Considerations > Rulings on Evidence
*HN1* ✚ An appellate court reviews the district court's evidentiary ruling for abuse of discretion. A finding of abuse of discretion will be made only where the reviewing court is firmly convinced that a mistake has been made. More Like This Headnote

Evidence > Relevance > Relevant Evidence
*HN2* ✚ Fed. R. Evid. 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. More Like This Headnote

Evidence > Hearsay Rule & Exceptions
*HN3* ✚ Under Fed. R. Evid. 803(8), the following are not excluded by the hearsay rule: records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth in civil actions and proceedings, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
*HN4* ✚ Ohio Admin. Code § 5120-9-02(D) sets forth the procedures to be used in correctional institutions to investigate use of force incidents. A use of force committee is appointed whenever use of force by one or more employees results in death of or serious physical harm to an inmate, or in any case where the director deems necessary. Ohio Admin. Code § 5120-9-02(D)(1). The committee shall interview all available staff members and inmates directly involved in the incident, plus as many witnesses as are necessary or expedient. Ohio Admin. Code § 5120-9-02(D)(2). Then, after all testimonies have been taken, the three-person investigating committee shall determine what actually happened and shall make a conclusion as to whether or not the staff member was justified in using force and whether or not excessive force was applied under the circumstances. A brief statement of the facts as found by the committee, and its conclusion as to the necessity for using force, its conclusion as to whether or not excessive force was employed, along with the reasons supporting these conclusions, shall be written on the bottom half of the force report. Ohio Admin. Code § 5120-9-02(D)(5). More Like This Headnote

Evidence > Witnesses > Personal Knowledge
*HN5* ✚ Pursuant to Fed. R. Evid. 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally
*HN6* ✚ 28 U.S.C.S. § 2111 provides: On the hearing of any appeal, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties. Fed. R. Civ. P. 61 provides: The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
Civil Procedure > Appeals > Standards of Review > De Novo Review
**HN7** An appellate court reviews de novo the district court's grant of summary judgment. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing the district court's decision to grant summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. The appellate court may not make credibility determinations or weigh the evidence. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
**HN8** An inmate's post-conviction excessive force claim must be raised exclusively under the Eighth Amendment's cruel and unusual punishment clause. The United States Supreme Court has set forth the standard for analyzing excessive force claims under the Eighth Amendment: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
**HN9** The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain. Factors to consider in determining whether the use of force was wanton and unnecessary include the extent of injury suffered by an inmate, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. More Like This Headnote

Constitutional Law > Cruel & Unusual Punishment
**HN10** Officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, a court must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN11** It is well settled that 42 U.S.C.S. § 1983 liability will not be imposed solely on the basis of respondeat superior. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN12** Simple negligence is insufficient to support liability of supervisory officials for inadequate training, supervision, and control of individual officers. A supervisory official may not be held liable under 42 U.S.C.S. § 1983 for the misconduct of those the official supervises unless the plaintiff demonstrates that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. Supervisory liability under § 1983 cannot be

based upon a mere failure to act but must be based upon active unconstitutional behavior.  More Like This Headnote

**COUNSEL:** ARGUED: Staughton Lynd, NORTHEAST OHIO LEGAL SERVICES, Youngstown, Ohio, for Appellants.

Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

ON BRIEF: Staughton Lynd, NORTHEAST OHIO LEGAL SERVICES, Youngstown, Ohio, John B. Juhasz, Youngstown, Ohio, Douglas B. Taylor, New Middletown, Ohio, for Appellants.

Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

**JUDGES:** Before: SILER and GILMAN, Circuit Judges; HEYBURN, Chief District Judge. *
SILER, J., delivered the opinion of the court, in which HEYBURN, D. J., joined. GILMAN, J., delivered a separate opinion concurring in part and dissenting in part.

* The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

**OPINIONBY:** SILER

**OPINION:** [***2]

 [*551] SILER, Circuit Judge. Plaintiffs Ronald Combs, Jason Robb, and George Skatzes, Ohio death row inmates, brought this civil rights action under 42 U.S.C. § 1983 [**2] against several Ohio Department of Rehabilitation and Correction ("ODRC") supervisors and officers, alleging that corrections officers used excessive force in quelling a disturbance at Mansfield Correctional Institution ("ManCI"). In appealing the dismissal of their excessive force claims, n1 plaintiffs assert that the district court erred in (1) striking the ODRC's Use of Force Committee Report, (2) dismissing the excessive force claims of Robb and Skatzes for failure to exhaust their administrative remedies as required by 42 U.S.C. § 1997e(a), [***3] and (3) granting summary judgment in favor of defendants on Combs's excessive force claims. In response, defendants concede that the district court's dismissal of Robb's and Skatzes's excessive force claims for failure to exhaust their administrative remedies was erroneous but maintain that the dismissal of those claims should be sustained because the record required summary judgment on the merits. As set forth below, we REVERSE the exclusion of the Use of Force Committee Report, AFFIRM IN PART and REVERSE IN PART the dismissal of plaintiffs' excessive force claims, and REMAND for further proceedings consistent [**3] with this opinion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Plaintiffs do not appeal the dismissal of their claims that defendants transferred plaintiffs Robb and Skatzes to the Ohio State Penitentiary in violation of state law and the Fifth and Fourteenth Amendments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I.

In 1997, a disturbance began in death row unit DR-4 at ManCI. At the time, thirty-seven inmates sentenced to execution were assigned to DR-4 and three corrections officers worked the unit. After one of the officers failed to secure an inmate prior to unlocking an outside recreation cage, the inmates overpowered the three officers and gained control of their keys. The inmates then took over the unit and allowed the three officers to leave.

Lieutenant Thomas Moroney, Northeast Regional Commander of the Special Tactics and Response Team for the ODRC, was called to ManCI. The Special Response Teams ("SRT") from several institutions in the region were also summoned to ManCI to assist in quelling the disturbance and regaining control of DR-4.

The inmates barricaded the doors [**4] to DR-4 and painted the windows to obscure the view from the hallway. The inmates were in possession of all the security keys to the entire unit. The SRT received information that the inmates had weapons such as broom and mop handles. According to plaintiffs, there was prisoner-on-prisoner violence as well as considerable destruction of property.

Lieutenant Moroney developed the tactical plan to regain control of DR-4, which was reviewed and approved by the [***4] incident commander, Warden Ralph Coyle. Moroney decided to use chemical agents prior to the SRT's entry to quell the disturbance and to ensure the safety and security of the staff and inmates as the inmates were [*552] escorted out of the unit. He assigned two teams to break windows and deploy chemical agents. One person on each team used a sledgehammer to break the cell windows around the unit's perimeter, while the other person on the team dispersed the chemical agents.

Once the chemical agents had been deployed, about five hours after the disturbance began, the SRT entered DR-4 through the front door. The inmates had chained the door and barricaded the entrance. After the SRT members breached the entry, they moved to the [**5] housing area, where they found the inmates in their cells. The inmates were not in their assigned cells, and at least one cell contained three inmates. Once all cell doors and food slots were secured, SRT members went to each cell and handcuffed the inmates. The SRT members escorted inmates from their cells out of DR-4 and into the Ohio Penal Industries ("OPI") warehouse area, where the inmates received medical treatment.

### A. Ronald Combs

Plaintiff Combs is a death row inmate serving two death sentences for aggravated murder convictions and six years for firearms specifications. See State v. Combs, 62 Ohio St. 3d 278, 581 N.E.2d 1071 (Ohio 1991). At the time the disturbance began, Combs, a porter, was serving the evening meal to other inmates. When he became aware of the disturbance, he returned to his cell and broke a pencil in the lock to prevent other prisoners from entering. While Combs waited in his cell to be rescued, the window was broken with a sledgehammer and two cans of tear gas were dispensed into his cell. Combs, who had trouble breathing, went to the broken window for air. Corrections Officer Chris Krupa, who was at the window, sprayed Combs [**6] in the eyes and face with liquid mace and told Combs "to get the fuck away from the window." Combs also heard men saying, "Get away from the window. Back up. Back up." A [***5] few moments later, more tear gas was shot through the broken window, engulfing Combs's cell. His skin began to burn.

SRT members arrived at Combs's cell more than an hour later. The officers ordered him to turn around, face the wall, and get down on his knees. Combs looked at the window and asked, "In all that glass?" The officers responded, "Get the fuck on your knees now." His cell door was then unlocked, and six to eight officers rushed into his cell and drove him headfirst to the floor. According to Combs, the officers stood on his neck and shoulders and hit him in the face and on the back of his head. He blacked out after officers kicked him in the genitals, and he awoke when officers were dragging him out the sally port doors. Combs asserts that

officers kicked him as he was escorted to the medical treatment area. Officers then handcuffed him to a bench inside a holding cell and two other officers sprayed him with mace. Other than stating that the officers wore black fatigues, masks, and helmets, Combs [**7] does not identify any of these officers.

**B. Jason Robb**

Plaintiff Robb is a death row inmate serving death sentences for two counts of aggravated murder and consecutive prison terms for two counts of kidnaping arising out of the deadly prison riot at the Southern Ohio Correctional Facility in Lucasville, Ohio, in 1993. See State v. Robb, 88 Ohio St. 3d 59, 2000 Ohio 275, 723 N.E.2d 1019 (Ohio 2000). When the disturbance began, he left his cell to check on the safety of other prisoners in the unit. He then returned to his cell with inmates Robert VanHook and Kenneth Richey.

Robb's cell window was broken and gas was dispersed through the window and the [*553] air vent. According to Robb, the gas caused their muscles to tighten and made them lose control of their urine and feces. Robb broke the glass out of a window, and the three inmates went to the window for air. Officers sprayed the inmates with mace to make them move away from the window. When Robb said that they were locked in their cell, the officers told Robb to shut up and to get away from the window. Officer Gilbert then swung a [***6] sledgehammer at Robb. The sledgehammer glanced Robb's face and hit his left shoulder. [**8] Robb claims that he could barely stand or breathe after an hour of exposure to the gas.

As the SRT members entered DR-4, Robb heard them calling out, "Where's Robb?" The officers arrived at his cell and directed the three inmates to remove everything from the floor area and to place it on the top bunk. When the officers entered the cell, Robb heard someone say, "You take the little mother fucker in the middle," referring to Robb. An officer hit Robb in the back of his head and then someone placed him in a choke hold and pulled him to the floor. The officers stomped on his back and kicked him in the genitals, face, and side. Robb heard the officers say, "This is what this mother fucker deserves." Robb was knocked unconscious while lying on the floor.

Captain Buck stood outside Robb's cell while other SRT members entered the cell. Robb was handcuffed inside the cell and handed off to Buck. As Buck escorted Robb, they both fell in the hallway. Robb's weight pulled Buck down with him. Another officer (or officers) helped Buck pick Robb up and assisted Buck in escorting Robb out of DR-4.

Robb woke up when he was on the floor outside his cell. Someone jerked on his hands, trying to pull [**9] him off the ground. After they pulled him up, the officers tried to run Robb into the stairway on the side of the recreation area. Robb turned his head to avoid the stairway, but it caught his shoulder. The officers picked him up and ran him into a wall. Robb blacked out again and hit the floor.

Buck was at Robb's left side the entire distance from DR-4 to OPI. At one point, the officer at Robb's right side handed him off to Officer Shasky. Shasky escorted Robb from the officers' desk area to OPI. When Robb woke again, Shasky rammed his knee and leg into Robb's face while Robb was kneeling. After a few more punches and kicks, Robb blacked out again. [***7]

As Buck and Shasky escorted him, Robb appeared dazed and was bleeding from his head, face, and hand. According to Shasky, Robb was not cooperating in the escort. Robb received medical treatment at OPI and then was transported to the hospital. He suffered a skull fracture and received more than thirty stitches.

**C. George Skatzes**

Plaintiff Skatzes is a death row inmate serving two death sentences for two aggravated murder convictions and fifteen to twenty-five years on each of three kidnaping convictions. He was involved [**10] in the 1993 Lucasville prison riot. Skatzes was in his cell when the disturbance began and did not leave his cell. He was hit by a tear gas canister shot through the window in his cell. He claims that when he went to the cell window for some air, someone outside shot him with liquid gas, which landed on his leg.

After about an hour, SRT members came to Skatzes's cell and told him to put his head on the wall. Skatzes waited about half an hour. When the officers returned to Skatzes's cell, they told him to put his hands behind his head and to get on his knees. Skatzes complied. The officers then ran into the cell and started to [*554] beat Skatzes. Attempting to remove Skatzes's right arm from underneath him, the officers bent his fingers, wrist, and legs and beat him on the side of his head. Skatzes finally allowed the officers to take his arm, and he was handcuffed. The officers picked him up by the handcuffs and escorted him out of the cell. A few steps outside the cell, someone came along, grabbed Skatzes's hair, and slammed his head into the wall. The officers then escorted Skatzes out of DR-4. Another officer approached Skatzes and hit him on the head. Skatzes claims that he took head [**11] shots from unknown officers.

## II.

Plaintiffs filed a four-count complaint pursuant to 42 U.S.C. § 1983 against Reginald Wilkinson, Director of the ODRC; Norman Hills, North Region Director of the ODRC; [***8] Bernard Ryznar, Chief of the Bureau of Classification; Ralph Coyle, Warden of ManCI; Lieutenant Thomas Moroney, Northeast Regional Commander of the Special Tactics and Response Team; Sergeant Don Berry, Tactical Commander of the SRT; and several corrections officers, both identified and unidentified. The first three counts of the complaint allege that defendants used excessive force against plaintiffs in quelling the DR-4 disturbance in violation of the Eighth and Fourteenth Amendments to the Constitution. The fourth count asserts that defendants transferred Robb and Skatzes to the Ohio State Penitentiary in violation of state law and the Fifth and Fourteenth Amendments.

On defendants' motion, the district court dismissed Robb's and Skatzes's excessive force claims for failure to exhaust their administrative remedies as required by 42 U.S.C. § 1997e (a). The district court also granted defendants' motion for judgment on [**12] the pleadings with respect to Robb's and Skatzes's transfer claims on the grounds that Robb failed to exhaust his administrative remedies and that there was no genuine issue of material fact with respect to those claims. n2 Finally, the district court granted summary judgment in favor of defendants on Combs's excessive force claims.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Plaintiffs do not appeal the district court's dismissal of the transfer claims.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## III.

### A. Use of Force Committee Report

After the DR-4 disturbance, the ODRC appointed a use of force committee to investigate the incident. Four months later, after conducting 123 interviews and reviewing numerous documents, the committee issued the Use of Force Committee Report, which detailed the

Get a Document by Citation - 85 F.3d 548
Case 1:00-cv-00603-MRB  Document 97-2  Filed 11/18/2003  Page 8 of 14
Page 8 of 14

committee's factual findings, conclusions, and recommendations regarding the use of force on September 5, 1997. Plaintiffs attached a copy of the Use of Force Committee Report to their memorandum in opposition to defendants' motion for summary judgment. [***9]

By marginal entry, the [**13] district court granted defendants' motion to strike the Use of Force Committee Report. On appeal, plaintiffs contend that the district court abused its discretion in striking, without explanation, the report, asserting that the report satisfies the definition of "relevant evidence" under Fed. R. Evid. 401 and is admissible under the public records and reports hearsay exception, Fed. R. Evid. 803(8). *HN1* We review the district court's evidentiary ruling for abuse of discretion. Snyder v. Ag Trucking, Inc., 57 F.3d 484, 492 (6th Cir. 1995). "A finding of abuse of discretion will be made only where the reviewing court is firmly convinced that a mistake has been made." Id.

*HN2* Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of [*555] consequence to the determination of the action more probable or less probable than it would be without the evidence." The report sets forth the use of force committee's findings and recommendations following the committee's investigation of the use of force during the DR-4 disturbance and is therefore relevant to plaintiffs' claims of excessive force.

*HN3* Under Fed. R. Evid. 803(8), [**14] the following are not excluded by the hearsay rule: "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . in civil actions and proceedings . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." *HN4* Ohio Admin. Code § 5120-9-02(D) sets forth the procedures to be used in correctional institutions to investigate use of force incidents. A use of force committee is appointed "whenever use of force by one or more employees results in death of or serious physical harm to an inmate, or in any case where the director deems necessary." Ohio Admin. Code § 5120-9-02(D)(1). The committee "shall interview all available staff members and inmates directly involved in the incident, plus as many witnesses as are necessary or expedient." Id. § 5120-9-02(D)(2). Then, [***10]

> after all testimonies have been taken, the three-person investigating committee shall determine what actually happened and shall make a conclusion as to whether or not the staff member was justified in using force and whether [**15] or not excessive force was applied under the circumstances. . . . A brief statement of the facts as found by the committee, and its conclusion as to the necessity for using force, its conclusion as to whether or not excessive force was employed, along with the reasons supporting these conclusions, shall be written on the bottom half of the force report . . . .

Id. § 5120-9-02(D)(5). Therefore, the Use of Force Committee Report contains the findings resulting from the committee's investigation made pursuant to Ohio law and falls within Fed. R. Evid. 803(8).

Defendants argue that plaintiffs failed to prove foundational facts showing that the public records and reports exception applies to the Use of Force Committee Report. In her deposition, however, Nancy Tewell testified that she was the chairperson of the use of force committee appointed by the ODRC to investigate the DR-4 disturbance and identified the document as the committee's report, thereby providing a sufficient foundation for the application of the public records and reports exception.

Defendants further argue that the report was properly excluded because the committee members lacked personal knowledge of [**16] DR-4 disturbance. $^{HN5}$Pursuant to Fed. R. Evid. 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Under defendants' argument, an investigative report would never be admissible as such reports typically are not prepared by persons directly involved in the matter under investigation. Investigative reports "embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge." 2 *McCormick on Evidence* § 296 (5th ed. 1999). Ohio Admin. Code § 5120-9-02(D)(1) specifically provides [***11] that "in no case may an officer involved in the incident, or his direct supervisor, be on the committee." Although the committee lacked personal knowledge of the DR-4 disturbance, the committee based its report on 123 interviews and numerous documents, including all staff and inmate incident reports, as well as the investigative [*556] report completed by the Ohio Highway State Patrol.

Accordingly, we find that, as the record now stands, the Use of Force Committee Report is admissible under Fed. R. Evid. 803(8). Upon remand, if the district court [**17] finds that "the sources of information or other circumstances indicate lack of trustworthiness," then it may still exclude the report.

## B. Excessive Force Claims

Plaintiff Combs asserts that the district court erred in granting summary judgment in favor of defendants on his excessive force claims. Defendants respond that the district court's summary judgment on Combs's excessive force claims should be affirmed. In addition, defendants argue that although the district court erred in dismissing the excessive force claims of plaintiffs Skatzes and Robb for failure to exhaust their administrative remedies, the district court's dismissal of those claims should be affirmed because the record required summary judgment on the merits, except for Robb's claims against defendants Buck and Shasky. $^{HN6}$*See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . ., the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the [**18] substantial rights of the parties.").

$^{HN7}$We review *de novo* the district court's grant of summary judgment. *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party [***12] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the district court's decision to grant summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). We may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

### 1. Excessive Force Claims Against Individual Officers n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Defendants concede that plaintiff Robb presents evidence giving rise to fact questions as to his excessive force claims against Captain Buck and Officer Shasky and that those claims should be remanded for further proceedings.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**19]

HN8 An inmate's post-conviction excessive force claim must be raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). In *Hudson v. McMillian*, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992), the Supreme Court set forth the standard for analyzing excessive force claims under the Eighth Amendment: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

HN9 The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, "a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain." *Pelfrey*, 43 F.3d at 1037 (internal quotation marks and alterations omitted). Factors to consider in determining whether the use of force [*557] was wanton and unnecessary include the extent of injury suffered by an inmate, "the need for application of force, the relationship between that need and the amount [**20] of force used, the threat 'reasonably perceived by the responsible officials,' and 'any [***13] efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7.

HN10 "Officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Id.* at 6. Because prison officials "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," we must grant them "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks omitted).

**a. Officer Chris Krupa**

Combs asserts that when he placed his face near the broken window in his cell, Officer Krupa sprayed him in the eyes and face with liquid mace and ordered him to move away from the window. The district court determined that Combs failed to establish that Krupa's conduct was malicious or sadistic, citing cases in which courts have recognized that [**21] the used of mace to control a prison inmate is not malicious or sadistic. *See, e.g., Thomas v. Greene*, 1999 U.S. App. LEXIS 34054, No. 99-3179, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming the dismissal of an excessive force claim by an inmate who was maced when he refused to consent to a strip search). The district court stated: "Keeping in mind that Defendant Krupa acted in the context of [a] prison disturbance in which prison officials had lost control of the unit, this Court must lend substantial deference to his decision to use mace, which he made in haste and under significant pressure." We agree and affirm the summary judgment in favor of Krupa.

**b. Unidentified Officers**

All three plaintiffs assert that unidentified officers used excessive force in removing them from their cells and escorting them to OPI for medical treatment. In dismissing Combs's excessive force claims due to his failure to present [***14] any evidence concerning the identity of the officers, the district court stated: "Even assuming that the facts as set forth by Plaintiff Combs are true, there is no way for a jury to determine whether the conduct was a good-faith effort to maintain or restore [**22] discipline, or maliciously and sadistically to cause harm, absent an allegation that certain individuals are responsible for the conduct." Claiming that they were unable to identify the officers because they wore black uniforms, gas masks, and no name badges, plaintiffs argue that "the District Court's holding, if permitted to

stand, discourages civil rights litigants from redressing their claims and encourages unscrupulous state officers to shield their identity and their liability with black suits, gas masks, and a lack of officer name badges."

The district court properly dismissed Combs's excessive force claims against any unidentified officers, and defendants are entitled to summary judgment on Skatzes's and Robb's claims against unidentified officers as well. Under their theory of the case, plaintiffs are entitled to recover damages from some source, even if they cannot prove that any named defendant actually used force against them. Plaintiffs essentially seek to impose respondeat superior liability against the supervisory officers, ManCI, ODRC, and/or [*558] the State of Ohio for the actions of these unidentified officers. HN11⚓It is well settled that § 1983 liability will not be imposed [**23] solely on the basis of respondeat superior. *Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982).* n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 As defendants point out, plaintiffs could have pursued recovery against the State of Ohio as an entity in the Ohio Court of Claims, without having to prove which individual state officers violated their rights or having to satisfy a standard higher than simple negligence or assault.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### 2. Excessive Force Claims Against Supervisory Officials

The district court held that the supervisory officials are entitled to summary judgment because they had no personal involvement in the alleged use of excessive force against [***15] Combs. On appeal, defendants contend that Skatzes's and Robb's supervisory liability claims fail for the same reason. Plaintiffs respond that the Use of Force Committee Report indicates misconduct by supervisory defendants in five areas: (1) inadequate briefing, (2) failure to wear identifying name tags, (3) excessive use of gas, (4) questionable use of force [**24] in cell extractions, and (5) failure to videotape.

HN12⚓"Simple negligence is insufficient to support liability of [supervisory officials] for inadequate training, supervision, and control of individual officers." *Hays, 668 F.2d at 872.* A supervisory official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff demonstrates that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).* "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays, 668 F.2d at 874.* Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior. *Bass, 167 F.3d at 1048.*

### a. Director Reginald Wilkinson

Plaintiffs allege that as director of the ODRC on September 5, 1997, Wilkinson was ultimately responsible for the ODRC SRT. Plaintiffs contend that it is reasonable to infer [**25] that Wilkinson saw and approved the tactical plan when it was faxed to the Central Office; however, they concede that the plan was consistent with constitutional standards. Because plaintiffs fail to present any evidence that Wilkinson, who was not even present at ManCI on the evening of the disturbance, engaged in active unconstitutional behavior, we affirm the summary judgment in his favor.

#### b. North Region Director Norman Hills

Hills was the North Region Director of the ODRC on September 5, 1997, and was present when the SRT went into [***16] DR-4. Plaintiffs allege that Hills viewed the extraction of at least twelve prisoners from their cells, including plaintiff Robb. In his answer, Hills admits being in the complex during the extractions, but claims to have witnessed no police brutality, a claim plaintiffs do not rebut. Simply viewing the extractions without evidence of more involvement is insufficient to demonstrate that Hills "implicitly authorized, approved, or knowingly acquiesced" in the use of excessive force against plaintiffs. Accordingly, we affirm the summary judgment for Hills.

#### c. Warden Ralph Coyle

Coyle was the warden of ManCI on September 5, 1997. Coyle, [**26] the incident [*559] commander, asked Lieutenant Moroney to prepare a tactical plan and approved that plan, which plaintiffs concede was consistent with constitutional standards. The Use of Force Committee Report offered by plaintiffs does not indicate that Coyle encouraged any misconduct or directly participated in it. Rather, the report demonstrates that Warden Coyle gave instructions not to use excessive force, ordering that there would be no "free-lancing" and "no Rambos" and stressing that there would be "no deadly force unless absolutely necessary." The district court properly granted summary judgment in favor of Warden Coyle.

#### d. Lieutenant Thomas Moroney

Lieutenant Moroney commanded the SRT that entered DR-4 and developed the tactical plan to retake the unit. Plaintiffs allege that Moroney was present during the extraction of inmates and did not intervene to prevent the use of excessive force. However, plaintiffs offer no evidence that Moroney personally witnessed the use of excessive force against plaintiffs or any other inmate.

The use of force committee found that Moroney inadequately briefed the SRT members prior to their entry into DR-4. Only a portion of the SRT members [**27] involved in the incident received a briefing, and no instructions were [***17] given concerning the extraction of inmates from their cells. The committee determined that "this led to SRT members 'free lancing' as they encountered a situation, and the onsite supervisors losing control of the SRT members['] actions."

The committee further found that at least four explosive distraction devices, 113 explosive gas devices, and six canisters of pepper mace were used to quell the disturbance. The committee stated that "based on the documented use of gas and the physical investigative interviews, it is believed that the air concentration level could have reached a lethal level." The committee found that Lieutenant Moroney, the on-site SRT commander, "failed to maintain fundamental control of the operation" and that the SRT's "use of gas, mace, and distraction control devices was excessive, uncontrolled, and clearly compromised the safety of staff and inmates."

Finally, the use of force committee found that SRT members used "questionable force" in restraining the inmates, extracting them from their cells, and escorting them from DR-4. The committee concluded that "[a] general loss [**28] of control existed in the manner in which inmates were controlled, restrained, and escorted from the cell block" and that "the on-site Commander of all of the Teams [Moroney] and/or the specific Commander of each Team failed to control the conduct of the assault force."

The Use of Force Committee Report, if admissible, creates genuine issues of material fact as to Moroney's liability. Based on the committee's findings that he inadequately briefed the SRT members, failed to control the use of chemical agents, and failed to control the SRT members

Get a Document by Citation - 325 F.3d 548
Case 1:01-cv-00508-MRB Document 97-2    Filed 11/18/2003    Page 13 of 14
Page 13 of 14

in the extraction of inmates, a reasonable jury could find that Moroney "implicitly authorized, approved, or knowingly acquiesced" in the use of excessive force against plaintiffs and other inmates. As such, the district court erred in granting summary judgment in his favor. [***18]

**e. Sergeant Donald Berry**

Lieutenant Moroney designated Sergeant Berry as the SRT's tactical commander. Plaintiffs allege that Berry led the SRT into DR-4 and was present during the cell extractions. Although he did not observe any officer using excessive force on an inmate, Berry did witness three SRT members making comments [*560] such as "this is the guy [**29] I want" and "I want to beat his ass" near the cell of a prisoner who is not a plaintiff. Berry did not admonish the officers. Plaintiffs have not submitted "proof that [Berry had] a culpable state of mind-- that the action or failure to act was to some degree deliberate rather than inadvertent." Hays, 668 F.2d at 873. On the basis of the evidence that he witnessed SRT members making comments about another inmate, a reasonable jury could, at most, conclude that Berry was negligent. Absent a showing that he encouraged or directly participated in the use of excessive force against plaintiffs, Berry was entitled to summary judgment.

**C. Injunctive Relief**

In their reply brief and at oral argument, plaintiffs emphasized that they seek injunctive relief as well as monetary damages. Specifically, plaintiffs request an order requiring corrections officers to wear name tags or other identification and to videotape cell extractions in order to avoid recurrence of the events of the DR-4 disturbance. The failure to wear identification or use a video camera is not a constitutional violation itself but is a violation of ODRC policies and regulations. We are without authority [**30] to order defendants to conform their conduct to state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984).

**IV.**

For the foregoing reasons, we REVERSE the exclusion of the Use of Force Committee Report. In addition, we REVERSE the district court's summary judgment as to plaintiffs' excessive force claims against Lieutenant Moroney and plaintiff Robb's excessive force claims against Captain [***19] Buck and Officer Shasky and AFFIRM as to all remaining defendants. The case is REMANDED for further proceedings consistent with this opinion.

**CONCURBY:** RONALD LEE GILMAN (In Part)

**DISSENTBY:** RONALD LEE GILMAN (In Part)

**DISSENT:** [***20]

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. I am in full agreement with the bulk of the majority opinion's analysis, but I disagree with its disposition regarding the claims against Sergeant Berry. The majority dismisses the excessive force claims against Berry on the ground that "Plaintiffs have not submitted proof that [Berry had] a culpable state of mind--that the action or failure to act was to some degree deliberate rather than inadvertent." (Maj. Op. [**31] at 18) (citation, brackets, and internal quotation marks omitted). To the contrary, I believe that a reasonable jury could find that Berry, like his direct superior, Lieutenant Moroney, "knowingly acquiesced in the use of excessive force in the extraction." Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982).

As the tactical commander of the SRT, Berry observed many of the extractions first-hand.

Get a Document by Citation - 315 F.3d 548
Case 1:01-cv-00503-MRB Document 97-2    Filed 11/18/2003    Page 14 of 14
Page 14 of 14

Although none of the extractions that he personally witnessed involved the use of excessive force, Berry would have seen that the officers conducting the extractions were not wearing identification badges. Such badges are required by Ohio law in part for the purpose of deterring officers from using excessive force. Berry also failed to ensure that the extractions were videotaped, which is another Ohio requirement intended to prevent the use of excessive force. Yet Berry permitted the extractions to occur without these safeguards, despite having witnessed three SRT members make comments such as 'this is the guy I want" and "I want to beat his ass" near the cell of a prisoner. Given these facts, I believe that a reasonable jury could conclude that he knowingly acquiesced [**32] in the use of excessive force. [*561] For this reason, I respectfully dissent from Part III.B.2.e. of the majority opinion.

Service: **Get by LEXSEE®**
Citation: **315 F3d 548**
View: **Full**
Date/Time: Monday, November 17, 2003 - 2:58 PM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
◐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.