UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY RIGGINS, | : | Case No. 1:01-CV-503 |
| | : | |
| Plaintiff, | : | Judge Dlott |
| | : | |
| vs. | : | |
| | : | **PLAINTIFF'S MEMORANDUM** |
| FORREST HUNT, et al., | : | **IN SUPPORT OF HIS MOTION** |
| | : | **FOR MISTRIAL** |
| Defendants. | : | |

I.   INTRODUCTION

Trial by ambush stole a verdict from Anthony Riggins. On November 20, 2003, after closing arguments, Plaintiff orally moved for a mistrial. Plaintiff moved for a mistrial on three grounds: 1) the demonstration conducted in defendants' closing argument was evidence and not argument; 2) the demonstration contained facts not in evidence; and 3) the demonstration was prejudicial. Plaintiff renewed his motion for a mistrial after the jury's verdict was read on November 21, 2003. This memorandum in offered in support of the oral motions for mistrial, pursuant to Fed. R. Civ. Proc. 7.

Plaintiff requests that the Court declare a mistrial before entry of the verdict in this case because the Defendants' closing argument was unfairly prejudicial and affected Plaintiff's substantial rights to a fair trial. Plaintiff seeks a prompt retrial in December, 2003 before defendant Hunt goes on active duty with the Ohio National Guard as expected in January, 2004. In the alternative, Mr. Hunt should be offered the opportunity to preserve his testimony by trial deposition.

**II. FACTS IN SUPPORT OF MOTION FOR MISTRIAL**

On November 20, 2003 during Defendants' closing argument Plaintiff objected, twice, to the demonstration that Defendants, Defense counsel, and Lt. Distel portrayed to the jury. This court overruled each objection, permitting the demonstration, as long as Mrs. Hoover, who was delivering the closing argument, directed the actions of the participants. While the demonstration began with Mrs. Hoover directing the movements of the participants, it quickly turned from argument to evidence when all Defendants and Mr. Hoover acted out their version of what happened without direction from Mrs. Hoover.

Plaintiff proffered into the record a description of the actions, which is summarized here:

> Defendants Hunt, Gannon, and Wells, witness Lt. Distel, and attorney Tracy Hoover demonstrated the critical events in this case during defense's closing argument. Their actions went far beyond the narrative by Mrs. Hoover. After Mrs. Hoover told each person to come to the well of the courtroom, the following actions occurred simultaneously. Mr. Hoover, acting as Mr. Riggins, stood in the "cell" as laid out on the floor of the well of the courtroom and faced the jury. He shook his head, mouthed words, acted violent and angry and grabbed Mr. Hunt's neck with both hands and pulled Mr. Hunt toward him.
>
> Mr. Hunt stood in front of Mr. Hoover with his back to the jury. As Mr. Hoover grabbed Mr. Hunt, Mr. Hunt tucked his chin to his neck and knocked his hat off. Mr. Hunt did not pantomime that he hit his mandown and used his phone. He did not mouth words.
>
> Mr. Wells was standing with his back to the jury, to the right of Mr. Hunt. As Mr. Hoover grabbed Mr. Hunt, Mr. Wells stepped "into the cell" by stepping to his right and forward. Mr. Wells did not use Plaintiff Ex. 14 (PR 24) or pantomime using a PR 24. He did not draw a PR 24 or use it in a "flat chop" maneuver on Mr. Hoover. Instead, Mr. Wells grabbed Mr. Hoover's left arm with both of his hands. Mr. Hoover's right arm came away from Mr. Hunt.
>
> Immediately after Mr. Wells stepped forward "into the cell" Mr. Gannon, standing with his back to the jury and to the left of Mr. Hunt, came into the cell, walking forward, not sideways with his back to Mr. Hoover. He also grabbed Mr.

> Hoover's arms. Mr. Gannon and Mr. Wells together pulled Mr. Hoover and wrested him to the ground. None of these 3 kept their bodies within the blue taped outline of the 9' x 6' "cell." Mr. Gannon and Mr. Hoover's bodies were wrestling and laying over the taped outline of the bed.
>
> After Mr. Gannon entered the cell, Mr. Hunt stepped forward and entered the "cell." He bent over and pantomimed cuffing Mr. Hoover. The entire demonstration was not timed. There was no indication during the demonstration as to when the door opened. Based on how quickly Mr. Wells entered the cell, the demonstration portrayed the cell door opening much faster than Plaintiff Exhibit 21 (videotape).

This demonstration was evidence since the actions were not limited to the direction of defense counsel. Furthermore, the demonstration did not conform to the evidence at trial. Defendant Hunt did not testify during trial so all of his un-narrated actions were evidence not submitted to cross examination. Defendant Hunt did not use his phone and mandown, contrary to Defendant Well's testimony at trial. Defendant Wells did not use a PR-24 in the demonstration, contrary to his sworn testimony. Mr. Hoover's actions of shaking his head, mouthing words, acting violent and angry were not based on evidence in the record.

Finally, the shock of the demonstration taking place a few feet from the jurors, unexpectedly, violently, and loudly, added to the prejudice.

### III. ARGUMENT

#### A. Standard for Determining Motions for Mistrial

The standard for appellate review of a ruling on a motion for mistrial is abuse of discretion. *Grossheim v. Freightliner* Corporation, 974 F.2d 745 (6th Cir. 1992). If the admission of evidence affects a "substantial right of the party" then a mistrial is properly declared. Fed R. Civ. Proc. 61. A trial court must conduct proceedings in a manner that permits only admissible evidence to be presented to the jury. FRE 103. Opposing

counsel should assist by offering evidence in a fair and proper manner. FRE 103(c) provides:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

A substantial right is affected by error that has a "material affect" upon or "substantially swayed" the deliberations of the jury. In contrast, harmless errors are those which do not affect the substantial rights of the party. Fed R. Civ Proc. 61. The Sixth Circuit has described the standard for determining whether error is harmless or affects substantial rights as follows:

> Justice Antonin Scalia, then a circuit judge, discussed the harmless error doctrine in the context of error in admission of evidence, in *Jordan v. Medley*, 711 F.2d 211 (D.C.Cir.1983). He wrote: We must ask, finally, whether wrongful admission of the testimony affected appellant's "substantial rights," see 28 U.S.C. § 2111 (1976); Fed.R.Evid. 103; Fed.R.Civ.P. 61; or was instead harmless error. That inquiry involves an assessment of the likelihood that the error affected the outcome of the case. See *United States ex rel. D'Agostino Excavators, Inc. v. Heyward Robinson Co.*, 430 F.2d 1077, 1083 (2d Cir.1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). As the Supreme Court has described the test: "[I]f one cannot say, with fair assurance, ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Application of this test is highly sensitive to the unique context of the particular case, including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected, see *id.*, at 763, 66 S.Ct. at 1247; *Carona v. Pioneer Life Ins. Co.*, 357 F.2d 477, 480 (5th Cir.1966); and the centrality of that issue to the ultimate decision, see *Charter v. Chleborad*, 551 F.2d 246, 249 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977).

*Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 157 (6th Cir. 1988). In that case, a plaintiff verdict in an age discrimination action was reversed and remanded for new trial based on the erroneous admission of the testimony of two workers who were also

separated from the defendant company. The Court held in that case that the evidence was not harmless as it was "arguably the…strongest evidence in plaintiff's favor at trial" and it was a close case. *Id* at 157. When that standard is applied to the actions of defense counsel and the admission of the demonstration in this case it is clear that a substantial right of plaintiff has been affected by the demonstration during the defendants' closing argument and that a mistrial should be declared.

      B.      **Admission of Demonstration by Defense counsel was Error**

First the Court must decide that the attorney's actions were misconduct. Second, the Court must ascertain whether the misconduct constituted reversible error. *U.S. v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991). When a single misstep by an attorney is so destructive to a party's right to a fair trial, it will constitute reversible error. *Id*. at 1150.

It is proper to prohibit counsel from demonstrating during closing argument when the demonstration would be misleading and would not fairly depict the conditions at the time of the incident at issue. *Cormier v. Rowan Drilling Co.*, 67 F.R.D. 102, 110 (E.D. LA. 1975). In *Cormier*, defendant objected to the court's refusal to permit him to 'demonstrate' in closing argument the way in which the steps from which Mr. Cormier fell. "The court so ruled because counsel proposed to make a misleading demonstration: there was testimony that mud and dirt, as well as oil, were on the steps, the piece in the courtroom was only a fragment, it was clean and had not been demonstrated to be in 'field condition,' and the demonstration in a quiet courtroom would not have accurately reflected conditions as they were at the time of the accident--on the platform in the Gulf of Mexico." *Id*.

The demonstration should have been denied and has irreparably harmed plaintiff here for the same reason. The defense counsel did not limit her presentation to the evidence in the record. By utilizing Hunt in the demonstration she in effect let him testify without subjecting him to cross-examination after the record was closed. In short, what the jury witnessed was a defense version that simply was untethered to the record and highly prejudicial. There was no warning to the court or plaintiff counsel about the demonstration. There was no opportunity by plaintiff counsel to voir dire the demonstration. Such an "argument" by defense counsel directly violated the admonition of FRE 103(c).

### C. Curative Instruction Was Insufficient To Cure Error

Defendants and their attorney's actions during closing were so prejudicial, they could not be cured by the supplemental instruction given to the jury at the eleventh hour of their deliberations. Plaintiff's counsel requested a curative instruction shortly after 11 a.m. on November 21, 2003. The Court agreed to give a curative instruction, however, not the one requested by Plaintiff. At 12:20 p.m. on November 21, well over 8 hours into their deliberations, the Court gave a supplemental instruction to the jury.

> Members of the jury, during Defendants' closing argument, there was a demonstration by the Defendants and their counsel. I have determined that the demonstration should be struck from the record. Therefore, you must disregard the demonstration during your deliberations, and you may not permit the demonstration to influence your verdict in this case.
> Do not interpret this instruction as any indication of how I think the case should be decided.

The jury reached their defense verdict shortly afterward. Plaintiff then renewed his motion for a mistrial. The curative instruction was simply too little too late to cure the prejudice of the demonstration. *See United States v. Solivan*, 937 F.2d 1146 (6th Cir.

6

1991)(twenty minute delay in curative instruction too late to remedy improper argument by prosecutor). In fact the demonstration was of such a shocking and powerful nature, that no instruction could cure it.

This Court repeatedly ruled that this would not be a "trial by ambush." This instruction was ignored when Defense counsel turned her argument into a presentation of unsworn, unexamined evidence. What resulted was not a trial by ambush, but a farce. This misconduct resulted in Plaintiff being deprived of his substantial right to a fair trial.

## IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that a mistrial be granted prior to the entry of the verdict in this case. In the alternative, Plaintiff requests that the verdict be vacated and a mistrial declared. Plaintiff requests a new trial date prior to Mr. Hunt's being called to a one year tour of duty in the Ohio National Guard, which he testified[1] may come in December 2003 or January 2004.

Respectfully submitted,

s/ Alphonse A. Gerhardstein
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
Alphonse A. Gerhardstein (0032053)
Attorney for Plaintiff
LAUFMAN & GERHARDSTEIN
617 Vine Street, Suite #1409
Cincinnati, Ohio 45202
(513) 621-9100

---

[1] Hunt Deposition p. 49 l. 12- P. 50 l. 13.

7

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 23, 2003, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by fax upon the court and all parties for whom counsel has not yet entered an appearance electronically, including:

R. Tracy Hoover
Marie Moraleja Hoover
Attorneys for Defendants
The Hoover Law Group
621 7th Street
Portsmouth, Ohio 45662

                                                   s/ Alphonse A. Gerhardstein
                                                   Attorney for Plaintiff