IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Anthony Riggins                               :
                                              :    Case No. C-1-01-503
                    Plaintiff                 :
                                              :    District Judge Susan J. Dlott
         v.                                   :
                                              :    ORDER GRANTING
Forrest Hunt *et al.*                         :    PLAINTIFF'S MOTION
                                              :    FOR NEW TRIAL
                    Defendants                :


        This matter comes before the Court on Plaintiff's oral motion for a mistrial (see doc.

#100) and Plaintiff's Motion for New Trial (doc. #107).  Following a trial which resulted in a

jury verdict in favor of Defendants Anthony Gannon, Jerry Wells and Forrest Hunt, Plaintiff

Anthony Riggins moves pursuant to Federal Rule of Civil Procedure 59 for a new trial.  For the

following reasons, the Court **GRANTS** Plaintiff's motion for a new trial.

I.      **FACTUAL BACKGROUND**

        Mr. Riggins is an inmate at the Southern Ohio Correctional Facility ("SOCF") in

Lucasville, Ohio.  He brought this action under 42 U.S.C. § 1983 against three correctional

officers ("COs")[1] at SOCF, Officers Gannon, Wells and Hunt, alleging that on May 12, 2000

Defendants used excessive force against Plaintiff in violation of his Eighth Amendment rights.

On November 17, 2003, the Court began trial to a jury on liability and damages.

---

[1]Plaintiff's complaint alleged claims against other SOCF personnel that the Court dismissed
prior to trial.

In his case in chief, Plaintiff presented the testimony of several witnesses, including himself and Officers Gannon and Wells.  Plaintiff elicited testimony regarding the dimensions and layout of his cell at SOCF on May 12, 2000.  Based on this testimony, Plaintiff's counsel marked out with electrical tape the outline of the cell on the floor of the well of the courtroom.

Plaintiff objected to several questions and remarks made by counsel for Defendants in counsel's cross-examination of Plaintiff.  Plaintiff had moved in limine to exclude evidence of Plaintiff's prison Rules Infractions Board ("RIB") record as evidence of prior bad acts inadmissible under Federal Rules of Evidence 404(b) and as unfairly prejudicial under Rule 403. At a conference with the parties conducted by the Court on the Friday before trial, the Court stated that it would have to see any such evidence in the context of the trial before ruling on its admissibility.  However, the Court said that it would exclude any such evidence unless Defendants could show that is was probative of a motive to start a fight.  Nonetheless, in cross-examining Plaintiff, defense counsel on more than one occasion asked questions regarding Plaintiff's RIB record.

Specifically, counsel asked questions such as:

- "You have done a lot of drastic things at SOCF to end up being at SOCF, haven't you?" (Doc. #109 at 8-9.)

- "One time you got locked up for attacking COs, too, didn't you?" (Id. at 9-10.)

- "Sir, this incident with the tray is not your first incident with a tray, either, is it?  I mean, you have had numerous tickets here for violations with trays, haven't you?" (Id. at 11.)

- "You have actually been found guilty of manipulating those trays and using them as weapons before, haven't you?" (Id. at 12.)

2

Although the Court sustained objections to these questions, striking some of them, defense counsel persisted, even making statements, rather than asking questions, with no foundation in the evidence that had thus far been presented in the trial:

- "I mean, you have never stopped. You break rules no matter where you go. No matter what is done to you, you persisted in constantly violating rules and regulations at the penal institutes, haven't you?" (Id. at 10-11.)

- "Well, I think a man desperate, such as yourself, would do about anything to get out of that place." (Id. at 19.)

On objection, the Court struck the foregoing comment and admonished defense counsel, "I don't want any more questions like that." (Id.) Nonetheless, defense counsel referred to Plaintiff's "history of lying and manipulation" later in the cross-examination of Plaintiff. (Id. at 24.) The Court then instructed the jury to disregard the comment of defense counsel. Defense counsel made similar comments and questions in cross-examining Plaintiff after re-direct examination by Plaintiff's counsel.

After Plaintiff rested, Defendants called one witness, another inmate named Daryle Harris, before resting. Officer Hunt did not testify.

On the fourth day of trial, November 20, counsel for the parties made closing arguments. During the time allotted for Defendants' closing argument, one of Defendants' attorneys, Marie Hoover, invited each of the Defendants, co-counsel Robert Tracy Hoover and another witness, Lieutenant Carl Distel, into the well of the courtroom. As it became clear that Defendants, Mr. Hoover and Lt. Distel were about to participate in some sort of physical demonstration for the jury, Plaintiff's counsel twice objected to the demonstration. The Court overruled each

objection, ruling that the demonstration may proceed so long as Ms. Hoover directed the actions of the participants. Each of the Defendants and Lt. Distel appeared to "play" himself, and Mr. Hoover appeared to play Mr. Riggins. While the demonstration began with Ms. Hoover directing the movements of the participants as she gave her argument as to what the evidence showed occurred during the encounter among the parties on May 12, 2000, the participants in the demonstration began moving very quickly and moved without direction from Ms. Hoover.

Several of the actions taken by the demonstrators did not conform to the evidence presented at trial. While the testimony of Officer Wells was that before any officer entered Mr. Riggins' cell, Officer Hunt hit his "man-down" button and used his phone to call for assistance, Officer Hunt did not pantomime these actions during the demonstration. Neither Officer Gannon, Officer Wells nor Mr. Hoover kept his body within the outline of the "cell" marked in tape on the floor, and Officer Gannon and Mr. Hoover's bodies crossed the taped outline of the "bed."[2]

After closing arguments and the Court's final instructions, the jury retired to deliberate. That day, Plaintiff moved for a mistrial, citing the impropriety of the demonstration that took place during Defendants' closing argument. The Court took the motion under advisement. The jury deliberated from 11:15 a.m. to 4:30 p.m. before leaving for the day. The following morning,

---

[2]Plaintiff cites as another inconsistency Officer Wells' testimony that he used a baton in subduing Mr. Riggins inside Mr. Riggins' cell. After the case had gone to the jury, Plaintiff's counsel placed into the record (via a proffer with defense counsel and the court reporter) a description of the demonstration that stated that Officer Wells did not use the baton that had been admitted into evidence or pantomime using such a baton. In their brief opposing Plaintiff's motion for a mistrial (doc. #116), Defendants argue that during the demonstration Officer Wells did pantomime using a baton. It is a testament to the fast-moving, out-of-control nature of the demonstration that the Court cannot say for sure which description of the demonstration is accurate on this point.

4

the jury having resumed its deliberations at 9 a.m., Plaintiff requested that the Court give the jury a supplemental instruction that the demonstration conducted by Defendants and their counsel was not conducted in the manner required by the Court's ruling and that the jury should disregard it.  At 12:20 p.m. on November 21, 2003, the Court gave a somewhat different supplemental instruction, in writing, to the jury:

> Members of the jury, during Defendants' closing argument, there was a demonstration by the Defendants and their counsel. I have determined that the demonstration should be struck from the record. Therefore, you must disregard the demonstration during your deliberations, and you may not permit the demonstration to influence your verdict in this case.
>
> Do not interpret this instruction as any indication of how I think the case should be decided.

The jury reached a verdict for the Defendants at 1:40 p.m. that day.  Plaintiff then renewed his motion for a mistrial, which the Court again took under advisement.  The Clerk signed the judgment in favor of the Defendants on November 24, 2003.  (See doc. #104.)  The filing date for both the jury verdict form and the judgment is listed on the electronic docket sheet as November 24.  (See docs. ## 103, 104.)  However, the Clerk entered the verdict form and the judgment into the Court's electronic docketing system, thereby electronically serving those documents on the parties, on the following day, November 25.  (See id.)  Plaintiff filed a motion for a new trial on December 5, 2003.  (Doc. #107.)  Defendants filed a response in opposition to Plaintiff's motion for a new trial, asserting untimeliness as the sole grounds on which the Court should deny the motion.  (Doc. #111.)  In their response, Defendants requested that, should the Court not deny the motion as untimely, they be allotted ten additional days to file a supplemental memorandum in response to Plaintiff's motion.

II.    **ANALYSIS**

The Court first considers Defendants' argument that Plaintiff's motion should be denied as untimely.

A.    **Timeliness of Motion**

Rule 59 of the Federal Rules of Civil Procedure governs motions for new trials.  Under Rule 59(b), to which Defendants cite, any such motion "shall be filed no later than 10 days after entry of the judgment."  Defendants argue that the relevant date for determining whether Plaintiff's motion is timely is November 24, the day the judgment was signed and filed, contending that Plaintiff's motion was filed one day late.  Plaintiff argues that November 25, the day the judgment was entered into the Court's electronic docketing system, is the relevant date and that his motion was filed ten days after the entry of judgment.

For purposes of Rule 59(b), the date of the "entry of judgment" is the date that the judgment was docketed, not the day that it was signed or filed.  See Williams v. Jabe, No. 93-1356, 1993 WL 473744, at **1 (6th Cir. Nov. 15, 1993) ("It is the date of entry or docketing of the order, rather than the date of signing or filing, which controls" whether motion is timely under Rule 59(e)'s requirement that a motion be made "no later than 10 days after entry of judgment"); Odita v. Ohio Dep't of Human Servs., No. 91-3013, 1991 WL 43912, at **1 (6th Cir. Mar. 29, 1991) (time for filing of motion for new trial under Rule 59 "calculated from the date of the entry of the order or decision on the docket sheet").  Thus, Plaintiff is correct that November 25 is the date of the "entry of the judgment" for purposes of Rule 59(b).

Rule 6(a) of the Federal Rules of Civil Procedure governs the computation of time under the rules.  Under this rule, the day of the event from which the designated period of time begins

to run shall not be included, while the last day of the period computed generally is included. The rule provides that where the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays and legal holidays, including Thanksgiving Day, shall not be included in the computation.[3]  Under these rules, Plaintiff filed his motion for a new trial seven days after the entry of judgment, well within the time frame allotted under Rule 59(b).  Thus, his motion was not untimely.

Defendants request an additional opportunity to respond to Plaintiff's motion in the event that the Court does not agree that Plaintiff's motion should be denied on the ground that it was untimely.  The Court will not grant their request.  Rather than bringing forth all arguments they might have in opposing Plaintiff's motion in the one opposition brief the rules allow them, Defendants seek to bring forth their arguments piecemeal.  The Court will not allow them to do so.  If Defendants had requested an extension for their opposition brief so that they might have more time to obtain trial transcripts, etc., the Court would have entertained such a request.  However, Defendants did not do so.[4]  Thus, the Court will proceed to consider the merits of Plaintiff's motion.

### B.    Merits of Motion for New Trial

Pursuant to Federal Rule of Civil Procedure 59(a)(1), "[a] new trial may be granted . . . in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  The Sixth

---

[3]In 2003, Thanksgiving Day was observed on November 27.

[4]The Court notes that Defendants submitted an extensive response to Plaintiff's brief in support of his oral motion for a mistrial and therein addressed the issue of the propriety of the demonstration that took place during Defendants' closing argument.  (See doc. #106.)

7

Circuit recognizes three grounds for granting a new trial: (1) the verdict is against the weight of

the evidence; (2) the damages are excessive; or (3) the trial was influenced by prejudice or bias

or otherwise unfair to the moving party.  Conte v. Gen. Housewares Corp., 215 F.3d 628, 637

(6th Cir. 2000).  Plaintiff argues that he is entitled to a new trial on the grounds that he was

unfairly prejudiced by both the demonstration that took place during Defendants' closing

argument and the conduct of Defendants' counsel in cross-examining him and on the grounds

that the verdict was against the manifest weight of the evidence.  The Court will first consider

Plaintiff's argument that he is entitled to a new trial because he was unfairly prejudiced by

misconduct of defense counsel during cross-examination of him and in closing argument.

The Federal Rules of Evidence mandate that a trial court must conduct proceedings in a

manner that permits only admissible evidence to be presented to the jury. See Fed. R. Evid.

103(c). Rule 103(c) provides that "[i]n jury cases, proceedings shall be conducted, to the extent

practicable, so as to prevent inadmissible evidence from being suggested to the jury by any

means, such as making statements or offers of proof or asking questions in the hearing of the

jury." The Sixth Circuit has made it clear that "[c]ounsel should not introduce extraneous matter

before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects and,

where there is a reasonable probability that the verdict of a jury has been influenced by such

conduct, it should be set aside."  Twachtman v. Connelly, 106 F.2d 501, 508-09 (6th Cir. 1939),

quoted in City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980).

> In determining whether "there is a reasonable probability that the
> verdict of a jury has been influenced" by improper conduct,
> warranting that the verdict be set aside, a court must examine, on a
> case-by-case basis, the totality of the circumstances, including the
> nature of the comments, their frequency, their possible relevancy
> to the real issues before the jury, the manner in which the parties

>and the court treated the comments, the strength of the case (e. g.
>whether it is a close case), and the verdict itself.

City of Cleveland, 624 F.2d at 756.

Rule 61 of the Federal Rules of Civil Procedure, entitled "Harmless Error," provides that no error in the admission of evidence or anything done by the parties is ground for granting a new trial "unless refusal to take such action appears to the court inconsistent with substantial justice." Additionally, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed. R. Civ. P. 61. The Sixth Circuit has described the standard for determining whether error is harmless or affects substantial rights as follows:

>That inquiry involves an assessment of the likelihood that the error
>affected the outcome of the case. As the Supreme Court has
>described the test: "[I]f one cannot say, with fair assurance, . . .
>that the judgment was not substantially swayed by the error, it is
>impossible to conclude that substantial rights were not affected."
>Application of this test is highly sensitive to the unique context of
>the particular case, including the one-sided or closely balanced
>nature of the evidence bearing upon the issue which the error
>arguably affected, and the centrality of that issue to the ultimate
>decision.

Schrand v. Fed. Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir. 1988) (quoting Jordan v. Medley, 711 F.2d 211 (D.C. Cir. 1983) (Scalia, J.)) (internal citations omitted).

## 1.    Demonstration during Defendants' closing argument

The demonstration that took place during Defendants' closing argument should not have been presented to the jury. Counsel is afforded the opportunity make closing arguments to the jury, and, as the Court instructed the jury, "[t]he function of lawyers is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call [the

jury's] attention to certain facts or inferences that might otherwise escape [its] notice." (Court's Instructions to Jury at 6.) Of course, "arguments made by the lawyers are not evidence in the case," and the Court instructed the jury accordingly. (Id.) However, the demonstration presented here was so lifelike, fast-moving and out of step with counsel's narration that it would be extremely difficult for a jury to distinguish it from "evidence" as "argument." Essentially, Defendants were able to present to the jury a powerful visual presentation of their version of events without being subject to cross-examination. Additionally, since the demonstration was not testimony, the participants were not under oath to speak truthfully (and two of the participants, including Officer Hunt, had not been sworn in during any portion of the trial). If the Court had viewed the demonstration prior to its presentation, the Court would not have allowed the demonstration to go forward.

Having concluded that the jury should not have viewed the demonstration, the Court must consider whether "there is a reasonable probability that the verdict of [the] jury has been influenced by" it. Several factors suggest that there is a reasonable probability that the jury was so influenced. First, the demonstration purported to represent the few moments in time that were most relevant to at least some of the questions posed to the jury. One of the questions posed to the jury, and the only question the jury answered, was whether Defendants used excessive force on Plaintiff. One of the key issues implicated by that question was, as it was explained to the jury, whether Defendants "unnecessarily and wantonly inflicted pain on" Plaintiff. (Id. at 18.) The Court instructed the jury that in answering this question the jury may want to consider such factors as the need for the application of force and the relationship between the need and the amount of force used. Of course, evidence as to what happened just prior to and after

10

Defendants entered Plaintiff's cell is highly relevant to considering those issues.  Thus, the demonstration was highly relevant to the real issues before the jury.

Additionally, the length of deliberations relative to the length of trial and to the relative lack of complexity of the issues put to the jury suggests that there is a reasonable probability that the jury's verdict was influenced by the demonstration.  After half a day of jury selection and opening statements, the jury heard less than two full days of testimony.  After closing arguments and the Court's instructions on the law, the jury proceeded to deliberate for nearly ten hours over two days in order to reach an answer to only one question as to each of the three Defendants. The length of the jury's deliberations relative to both the length of the trial and the relatively uncomplicated issues before it suggests that the case was a close one.

While the factors set forth in City of Cleveland thus weigh in favor of concluding that there is a reasonable probability that the demonstration influenced the verdict, the supplemental instruction weighs against such a conclusion.  "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to [the party against whom the evidence is offered]."  Greer v. Miller, 107 S. Ct. 3102, 3109 n.8 (1987), cited in Holmes v. City of Massillon, 78 F.3d 1041, 1047 (6th Cir.), cert. denied, 519 U.S. 935 (1996).  However, the Court agrees with Plaintiff that "[t]he curative instruction was simply too little too late" (doc. #107 at 8) and concludes that there is an overwhelming probability that the jury was unable to disregard the demonstration and a strong likelihood that the demonstration devastated Plaintiff's case.  The supplemental instruction was not given until the case had been submitted to the jury

and the jury had deliberated for more than eight hours over the course of two days.  Such a delay

in giving a curative instruction both makes it more difficult for jurors to put the objectionable

material out of their minds in reaching a verdict and undermines the force of the judicial

denunciation of the conduct in question.  See United States v. Solivan, 937 F.2d 1146, 1156-57

(6th Cir. 1991) (twenty minute delay in curative instruction was too late to remedy improper

argument by prosecutor).  Additionally, the demonstration was so powerful and of such

relevance to the central issues of the case that no instruction could have undone the damage

completely, no matter when it was given.  In a passage cited favorably by the Court of Appeals

of this circuit, the Fifth Circuit aptly remarked that

> . . . the bench and bar are both aware that cautionary instructions
> are effective only up to a certain point. There must be a line drawn
> in any trial where, after repeated exposure of a jury to prejudicial
> information, a judge realizes that cautionary instructions will have
> little, if any, effect in eliminating the prejudicial harm.

O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1309 (5th Cir. 1977), quoted in City of Cleveland, 624

F.2d at 759.[5]  Thus, in light of the factors set forth in City of Cleveland, the Court finds a

reasonable probability that the demonstration influenced the verdict in this case.

For these very same reasons, the error in placing the demonstration before the jury was

not a harmless one.  The Court cannot say with fair assurance that the judgment was not

substantially swayed by the demonstration.  This is especially true given the close nature of the

case and the centrality of the issues addressed by the demonstration to the ultimate questions put

---

[5]As the trial judge colorfully remarked in O'Rear, "You can throw a skunk into the jury box
and instruct the jurors not to smell it, but it doesn't do any good."  O'Rear, 554 F.2d at 1309.

to the jury.  Thus, the Court concludes, based on the demonstration placed before the jury, that a new trial is warranted.

### 2.    Cross-examination of Plaintiff

Plaintiff is also entitled to a new trial based on defense counsel's persistent improper questioning and statements during cross-examination of Plaintiff.  Prior to trial, Plaintiff had moved to exclude evidence of Plaintiff's RIB record, in part on the basis of Federal Rule of Evidence 404(b).  That rule provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).  Defendants argued that this rule did not mandate exclusion of Plaintiff's RIB record because that evidence tended to show that Plaintiff had a motive, plan and intent to "set up" Defendants by instigating a fight with them on the day of the incident and thus obtain a transfer to another institution.  Defendants pointed to evidence in Plaintiff's prison record that he wished to be transferred to general population and had been faking mental illness.  The Court was – and remains – at a loss to understand how evidence that Plaintiff had behaved badly in prison or desired to be transferred to general population would evidence a motivation to instigate a fight with a corrections officer.  It would seem that if Plaintiff wanted to be put back in the general population, he would strive to stay out of trouble.  Prior to Defendants' repeated cross-examination of Plaintiff regarding his past prison behavior, there had been no evidence presented that would suggest that evidence of Plaintiff's prior prison rules infractions was probative of Plaintiff having a motive to start a fight with guards or anyone else at SOCF.  Thus, the

13

information that defense counsel sought to elicit on cross-examination was not admissible, and the Court advised counsel of such.  Nonetheless, counsel persisted in asking the impermissible questions and in even making statements.  Counsel's conduct was improper, repeated and placed before the jury matters that should not have been before it.  Questions by counsel designed to elicit testimony that the Court has ruled is inadmissible may provide grounds for a new trial. See, e.g., Igo v. Coachmen Indus., Inc., 938 F.2d 650, 653-54 (6th Cir. 1991) (attorney misconduct in asking questions referencing a matter that the trial court excluded in ruling on a motion in limine was basis for new trial, where not reprimanded by the court and where counsel made inflammatory, prejudicial statements during argument).

The Court then must consider whether "there is a reasonable probability that the verdict of [the] jury has been influenced by" the improper questioning and statements by defense counsel during his cross-examination of Plaintiff.  The Court concludes that there is such a reasonable probability.  The questions and comments of counsel both undermined Plaintiff's credibility and suggested that he was violent towards others.  The improper comments and questions were repeated and pervaded the relatively brief cross-examination of Plaintiff. Because they challenged Plaintiff's credibility, they went to the real issues before the jury, which was charged with determining whether the incident in question happened as Plaintiff said it did or as the officers said it did.  While the Court treated the questions and comments of defense counsel negatively and instructed the jury to disregard several of counsel's questions and comments, counsel persisted.  Finally, as explained supra, the case appeared to be a close one, hinging on credibility of the parties, as demonstrated by length of the jury deliberations relative to the length of the trial and the rather simple issues before the jury.

14

For these very same reasons, defense counsel's misconduct in his cross-examination of Plaintiff was not harmless. The Court cannot say with fair assurance that the judgment was not substantially swayed by the inappropriate comments and questions of counsel. This is especially true given the close nature of the case and the importance of Plaintiff's credibility to the questions before the jury in this case. Thus, the Court concludes that a new trial is warranted by the separate reason of defense counsel's conduct during cross-examination of Plaintiff.

Having thus concluded, the Court need not and does not consider Plaintiff's argument that he is entitled to a new trial because the verdict was against the manifest weight of the evidence. For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for New Trial. (Doc. #107.) Plaintiff's oral motion for mistrial (see doc. # 100) is thus **DENIED AS MOOT**.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

15