IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANTHONY RIGGINS,**  Case No. 1:01-CV-503

    **Plaintiff,**

Vs.  JUDGE WATSON

**FORREST HUNT, III, et al.,**

    **Defendants.**  **DEFENDANTS'**
  **MOTION TO DISMISS**

Now come defendants, by and through undersigned counsel, to respectfully submit their motion to dismiss the plaintiff's case. This motion is supported by the following memorandum.

Respectfully submitted,

s/ Marie Moraleja Hoover

Marie Moraleja Hoover #0063254
Attorney for Defendants
621 7th Street
Portsmouth, Ohio 45662
(740) 354-1000
Fax: (740) 353-0661

**MEMORANDUM IN SUPPORT**

Defendants respectfully move this Court to dismiss the above styled action. On or about October 24, 2005, the Plaintiff, Anthony Riggins, was convicted by a jury of two counts of assault against Forrest Hunt and Jerry Wells.[1] The conviction is based on the same facts and circumstances which is the basis of this lawsuit. The doctrines of collateral estoppel and res judicata govern in this matter.

---

[1] Anthony Gannon was not a victim in the indictment against Anthony Riggins. Anthony Riggins was indicted on two counts of assault with Forrest Hunt and Jerry Wells being the victims of the two counts of assault.

The Supreme Court has held that issues decided in a state court criminal proceeding may have a collateral estoppel effect in a section 1983 civil rights action, but only as to relitigation of the same issues which were previously decided in the criminal proceeding. Allen v. McCurry, 449 U.S. 90 (1980). quoted in Sigley v. Kuhn, 205 F.3d 1341 (Table), 2000 WL 145187 (6th Cir.). The "proper test for the applicability of *res judicata* is not whether the plaintiff in fact argued his constitutional claims in the state proceedings, but whether he could have." Manego v. Cape Cod Five Cents Savings Bank, 692 F.2d 174, 175 (1st Cir.1982).

This case is markedly distinguishable from other cases in which the civil rights actions were not barred. In Sigley, the criminal defendant/1983 plaintiff entered a "no contest" plea to the criminal proceeding and was found guilty of resisting arrest. No evidence was presented to preclude the 1983 action. Likewise, when a voluntary plea of guilty is made, no evidence is presented to preclude the 1983 action. Russell v. Steck, 851 F.Supp. 859, 868-69 (N.D.Ohio 1994). In the case at bar, the Plaintiff Anthony Riggins was convicted of assault in state court proceedings. Evidence was presented and fully litigated before a jury regarding the incident with Forrest Hunt, Jerry Wells, Anthony Gannon and Anthony Riggins. Anthony Riggins did not present any evidence regarding the affirmative defense of self-defense; nor did he present any evidence regarding the alleged excessive use of the force of Forrest Hunt, Jerry Wells, and/or Anthony Gannon. Anthony Riggins, who was represented by counsel in the criminal proceeding, could have argued self-defense and/or excessive use of force as an affirmative defense to the assault charges against him; Anthony Riggins chose not to do so although he had ample opportunity. A jury of twelve persons heard all of the evidence

presented regarding the incident which is the subject of this lawsuit; and the jury convicted Anthony Riggins of two counts of assault against Forrest Hunt and Jerry Wells. The trial court then proceeded to sentence Anthony Riggins to eleven (11) months on each count. The court ordered that the eleven (11) months sentences would run consecutively to one another and also consecutively to the sentence that the defendant is currently serving. See attached Judgment Entry. Exhibit A.

For the foregoing reasons, defendants respectfully move this Court to bar Anthony Riggins from pursuing the 1983 claim against them since the subject matter of this lawsuit has already been litigated in state court resulting in convictions of two counts of assault against Forrest Hunt and Jerry Wells.

s/ Marie Moraleja Hoover

Marie Moraleja Hoover #0063254
Attorney for Defendants
621 7th Street
Portsmouth, Ohio 45662
(740) 354-1000
Fax: (740) 353-0661

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2005 a copy of the foregoing pleading was filed electronically. Notice of filing will be sent to all parties for whom counsel has entered a notice of appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marie Moraleja Hoover
Marie Moraleja Hoover #0063254
Attorney for Defendants

205 F.3d 1341 (Table), 2000 WL 145187 (6th Cir.(Ohio))
**Unpublished Disposition**

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.
Scott A. SIGLEY, Plaintiff-Appellee,
v.
Roger J. KUHN, Defendant-Appellant.
Nos. 98-3977, 99-3531.
Jan. 31, 2000.

On Appeal from the United States District Court for the Northern District of Ohio.

Before MARTIN, Chief Judge; CLAY, Circuit Judge; and WEBER, District Judge. [FN*]

FN* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.


MARTIN, Chief Judge.
**\*\*1** In this consolidated appeal, State Trooper Robert J. Kuhn appeals an order awarding Scott Sigley $40,000 in compensatory damages and $100,000 in punitive damages based on a jury's finding that Kuhn used unreasonable and excessive force during Sigley's arrest for drunk driving. Kuhn contends that the district court erred in four ways: (1) by not barring Sigley from pursuing a violation of his civil rights pursuant to 42 U.S.C. § 1983 based upon his entry of a plea of "no contest" to the charge of resisting arrest; (2) in denying Kuhn's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and his renewed motion for judgment as a matter of law following the verdict pursuant to Fed. R. Civ. P. 50(b) on the issue of unreasonable and excessive force; (3) in denying him qualified immunity for the use of deadly force against Sigley; and (4) in awarding Sigley $117,052.30 in attorney's fees and $45,054.63 in costs and expenses, an amount Kuhn argues to be unreasonable. We affirm the district court's order.

I.

During the early morning hours of October 25, 1996, Trooper Robert J. Kuhn stopped Scott Sigley (who was nineteen years old at the time) for speeding and driving erratically in Kent, Ohio. Kuhn suspected that Sigley was drunk and administered several field sobriety tests. Sigley was unarmed. Following the tests, Kuhn informed Sigley that he failed the tests and was under arrest. Sigley dropped to his knees, started crying and begged to be released. When Kuhn tried to bring Sigley to his feet, Sigley tackled him and the two began struggling on the ground.

What happened after that is disputed. Kuhn argues that the two men were struggling for Kuhn's gun, whereby Kuhn prevailed and shot Sigley twice. Sigley argues that he rolled away from Kuhn and as he tried to stand up, Kuhn withdrew his gun and shot him twice in the back.

When Sigley was shot, he immediately dropped to the ground. He then jumped to his feet and ran into an adjacent field where he collapsed. He later surrendered after other police officers arrived on the scene. As a result of the shooting, Sigley suffered serious bodily injuries and severe emotional trauma, causing him to incur expenses for medical care and treatment.

Following the incident, Sigley brought this suit under 42 U.S.C. § 1983 in the Court of Common Pleas in Portage County, Ohio, alleging that he had been subjected to unreasonable and excessive force. The case was then removed by Kuhn to the U.S. District Court for the Northern District of Ohio.

Prior to trial, Sigley had entered a plea of "no contest" in state court and had been found guilty of the felony of resisting arrest in violation of Ohio Revised Code § 2921.33. [FN1]

FN1. Section 2921.33 reads as follows:

(A) No person, recklessly or by force, shall resist arrest or interfere with a lawful arrest of the person or another.

(B) Whoever violates this section is guilty of resisting arrest, a misdemeanor of the second degree. If the offense is committed by an offender who brandishes a deadly weapon or who attempts to gain control of a deadly weapon that is in the possession of a law enforcement officer, resisting arrest is a felony of the fifth degree.

(C) As used in this section, "deadly weapon" has the same meaning as in section 2923.11 of the Revised Code.

At trial, Kuhn moved for judgement as a matter of law at the close of Sigley's case and at the close of all evidence pursuant to Fed. R. Civ. P. 50(a) on the issues of unreasonable and excessive force and qualified immunity. These motions were denied. The jury then rendered a verdict for Sigley, awarding him $40,000 in compensatory damages and $100,000 in punitive damages. The judgment was entered on July 23, 1998.

**\*2** After the trial, Kuhn moved for a post-verdict judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). This motion was denied. Kuhn then filed a timely notice of appeal to this Court on August 21, 1998.

On August 25, 1998, Sigley then moved for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. Kuhn opposed the motion. The matter was referred to the magistrate judge, and was set for hearing on October 29. The hearing was held and the magistrate judge issued a Report and Recommendation on February 18, 1999, recommending $162,107.13 in attorney's fees and expenses ($117,052.30 in attorney's fees and $45,054.63 in costs and expenses). The Report and Recommendation was received by the district court, and on March 19, 1999, the district court issued an order adopting the magistrate judge's Report and Recommendation.

Kuhn filed a timely notice of appeal of this decision on April 16, 1999.

II.

We review *de novo* the district court's denial of Kuhn's motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) & (b). We do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury. *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150 (6th Cir.1995). Instead, we must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The motion should be granted, and we should reverse the district court's decision, only if reasonable minds could not come to a conclusion other than one in favor of the movant. *See id.*

III.

*Sigley's 42 U.S.C. § 1983 Claim*
In the first of his four claims on appeal, Kuhn contends that the district court erred by not barring Sigley from pursuing a 42 U.S.C. § 1983 claim in federal court in view of the fact that Sigley had entered a plea of "no contest" to the charge of resisting arrest in state court. The Supreme Court has held that issues decided in a state court criminal proceeding may have a collateral estoppel effect in a section 1983 civil rights action, but only as to relitigation of the same issues which were previously decided in the criminal proceeding. *Allen v. McCurry,* 449 U.S. 90 (1980). Moreover, in *Donovan v. Thames,* 105 F.3d 291, 295-97 (6th Cir.1997), we held that a conviction for resisting arrest does not bar a subsequent excessive force claim.

In determining whether there is a preclusive effect, we must look to the law of the state in which the judgment was entered. *See id.* at 294-95. In *Donavan,* we analyzed Kentucky's law as it applies to issue preclusion and determined that the officer's use of force was not essential to the conviction for resisting arrest, and that the issue of excessive force was never actually litigated in the state court criminal proceeding. *Id.* at 295. Moreover, because there was no indication that the plaintiff could have raised the section 1983 claim as a separate cause of action in the state court criminal proceeding, there was no claim preclusion. *See id.* In holding that the section 1983 action was not precluded, we explained that "to hold otherwise would give law enforcement authorities carte blanche to respond as they please to criminal behavior." *Id.* at 297.

**\*\*3** In this case, we must look to Ohio law, which is analogous to Kentucky law, in order to determine the impact of Sigley's criminal conviction in state court on his right to assert a section 1983 civil rights claim in federal court. Under Ohio law, "collateral estoppel precludes relitigation in a second action of an issue which has been actually and necessarily litigated and determined in a prior action by the parties, or their privies in the first action." *Mink v. Weglage,* 614 F.Supp. 93, 94 (S.D.Ohio 1985). However, courts applying Ohio law have found that under similar circumstances to the facts in this case, criminal convictions do not preclude subsequent civil rights actions. *See Russell v. Steck,* 851 F.Supp. 859, 868-69 (N.D.Ohio 1994); *see also Eyer v. Reynoldsburg,* 756 F.Supp. 344, 347 (S.D.Ohio 1991). In *Russell,* the court held that a criminal conviction of a plaintiff for driving under the influence of alcohol did not present a *res judicata* or collateral estoppel bar to a subsequent civil suit against the officer who allegedly violated the plaintiff's Fourteenth Amendment right to be free from unjustified intrusions on personal security. *Russell,* at 868-69. In its opinion, the court noted that criminal convictions under Ohio law generally do not prohibit a plaintiff from litigating facts previously determined in a criminal proceeding in a subsequent civil rights claim. *Id.* In *Eyer,* an arrestee brought an action against his arresting officers for malicious prosecution and section 1983 violations. The court held that plaintiff's convictions for possession of an unauthorized weapon and drugs, on a voluntary guilty plea, did not preclude the subsequent section 1983 civil action against police officers for alleged constitutional violations during the arrest. *Eyer,* at 344. The court stated that the propriety of the defendants' actions was never "actually litigated" in the state court criminal proceeding. *Id.* at 348. Because the plaintiff entered a plea of guilty, which prevented the parties from presenting or contesting evidence surrounding the officers' actions, the state trial court never had to make an actual determination of the legality of the officers' actions. Moreover, the court could not necessarily determine whether the defendant's conduct was a constitutional violation because the conduct was essential to the trial court's acceptance of the plea. *Id.* Thus, the subsequent section 1983 action was not barred by the doctrines of issue or claim preclusion.

In this case, the issue of whether Kuhn used excessive force in arresting Scott was neither actually litigated nor necessary to a determination on the charge of resisting arrest in state court. Because Sigley entered a "no contest" plea, the state trial court did not hear any evidence on the conduct of Sigley or Kuhn nor did it need to hear evidence of the legality of Kuhn's conduct in accepting the "no contest" plea. Thus, based on our decision in *Donovan* and the law of Ohio, Sigley's section 1983 action was not barred by either *res judicata* or collateral estoppel. The district court was correct in its determination

of this issue.

*Sigley's Unreasonable and Excessive Force Claim*

**\*\*4** Fed R. Civ. P. 50 governs motions for judgment as a matter of law. Fed. R. Civ. P. 50(A)(1) provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In this case, Kuhn contends that the district court erred in denying his motion for a directed verdict on the issue of unreasonable and excessive force. Kuhn relies on the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994) to support his position. In *Heck,* the Supreme Court addressed the question of whether a state prisoner, convicted of murdering his wife, may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983. While the appeal was pending, Heck filed a section 1983 action against the prosecutors alleging that they had engaged in an unlawful and arbitrary investigation, had knowingly destroyed evidence, and had caused an illegal voice identification procedure to be used at his trial. The claims were dismissed because the district court found that they directly implicated the legality of Heck's confinement. The Supreme Court held that a plaintiff cannot maintain a section 1983 action if it would render a state court criminal conviction invalid. *Id.* However, the Court explained that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487.

In this case, Sigley's section 1983 action does not seek to invalidate his charge for resisting arrest. The parties do not dispute that Kuhn made a lawful attempt to arrest Sigley for drunk driving, and that Sigley unlawfully resisted. Sigley's section 1983 action attempts to prove that Kuhn used unreasonable and excessive force subsequent to Sigley's arrest and resistance. Nothing in that determination invalidates the underlying criminal conviction for resisting arrest. Thus, because Sigley's section 1983 claim can be maintained, and was maintained, with a favorable finding on the issue of whether Kuhn used unreasonable and excessive force, there is no basis for granting Kuhn his motion for a directed verdict.

The district court's decision to deny Kuhn's motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) & (b) was thereby properly determined.

*Kuhn's Qualified Immunity Claim*

Review of a denial of a qualified immunity claim raises an issue of law, and is therefore reviewed de novo. See *Yates v. City of Cleveland,* 941 F.2d 444, 446 (6th Cir.1991).

**\*\*5** Government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In other words, qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one that a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed. See *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994). Thus, officials are "entitled" to qualified immunity when their decision was reasonable, even if mistaken. See *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995).

However, summary judgment on the issue of qualified immunity is not appropriate if there is a factual dispute on which the question of immunity turns, "such that it cannot

be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988). Many times "the jury becomes the final arbiter of [defendants'] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir.1989). At bottom, it is for the trier of fact, not the court, to make credibility determinations with respect to what searches, seizures, and applications of force, if any, took place after the defendants knew or should have known of their mistake and were required to retreat. *See Pray,* at 1161.

In this case, Sigley has alleged sufficient facts supported by sufficient evidence to indicate what Kuhn allegedly did was objectively unreasonable in light of Sigley's right to be free from the use of excessive force under the Fourth Amendment. Thus, the legal question of immunity was completely dependent upon the jury's view of which facts pertaining to the question of unreasonable and excessive force were acceptable. In the end, the jury determined that Kuhn did use unreasonable and excessive force and that he knew or should have known of his mistake. Accordingly, the district court's denial of Kuhn's qualified immunity claim was appropriate.

IV.

With it determined that the district court did not err in denying Kuhn's motions for judgment as a matter of law, we turn now to the issue of attorney's fees, costs and expenses. Kuhn contends that the district court abused its discretion in awarding $117,052 in attorney's fees and $45,054.63 in costs and expenses, because such amounts were excessive and unreasonable.

**\*\*6** A federal district court has sound discretion to award attorney's fees pursuant to 42 U.S.C. § 1988. *See Hadix v. Johnson,* 65 F.3d 532, 534 (6th Cir.1995). A court of appeals may review the decision to award such fees *de novo,* applying the same standard as the district court, and absent an abuse of discretion, the court shall affirm the award. *See id.* "An abuse of discretion exists if the district court based its ruling on an erroneous view of the law or a clearly erroneous assessment of evidence." *Apostolic Pentecostal Church v. Colbert,* 169 F.3d 409, 417 (6th Cir.1999). "Because of the 'district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters,' an award of attorney's fees under section 1988 is entitled to substantial deference." *Hadix,* at 534 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

In 1976, Congress enacted the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of the act is to ensure "effective access to the judicial process" for persons with civil rights grievances. *Hensley,* at 429. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee award unless special circumstances would render such an award unjust. The amount of the fee must be reasonable. *See Blum v. Stenson,* 465 U.S. 886, 893 (1984). It remains for the district court to determine what fee is reasonable and the district court is entitled to substantial deference in making that determination. *See Hensley,* at 437.

In determining the amount of a reasonable fee, the most useful starting point is to calculate the number of hours spent on the litigation multiplied by a reasonable hourly rate. *See id.* at 434. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *See id.* Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *See id.* Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary. *See id.* at 434. Hourly rates should not exceed market rates necessary to encourage competent lawyers to undertake the representation in question. *See Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986).

In this case, Kuhn claims that the district court erred by (1) ordering payment of attorney's fees at an hourly market rate for the Northern District of Ohio rather than a reasonable market rate for Akron, Ohio; (2) failing to reduce the undocumented hours

claimed in its award of attorney's fees; (3) not reducing the award for attorney's fees for duplicative work; and (4) awarding unreasonable costs and expenses. We review each of these claims in kind.

**\*\*7** First, Kuhn contends that the hourly rate for attorney's fees should have been fixed by rates customarily charged by Akron lawyers having similar experiences in civil rights litigation rather than by rates charged by lawyers throughout the Northern District of Ohio. Generally, district courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorney's in individual cases. *See* [Louisville Black Police Officers Organization, Inc. v. City of Louisville, 700 F.2d 268, 278 (6th Cir.1983)](#). In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. *See* [Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 638 (6th Cir.)](#). We have offered the local market approach as an acceptable approach to determining rates of compensation. *See City of Louisville,* at 268. This approach basically limits fees awarded for higher-priced, non-local legal service to the lower rates of those who practice in the local forum unless the prevailing party demonstrates that it is necessary to retain outside, non-local counsel after a good-faith effort to locate local counsel fails or that the non-local counsel possesses specialized expertise in the matter to be litigated. A court's choice not to apply local market rates for attorney's fees is not an abuse of discretion. *See* [Wayne v. Village of Sebring, 36 F.3d 517, 533 (6th Cir.1994)](#).

In this case, it is within the discretion of the district court to determine what the relevant jurisdiction is and how much compensation is reasonable to attract qualified and competent attorneys. The relevant jurisdiction for comparable attorney's fees may vary depending on the facts and circumstances of each case and the availability, skills and expertise of the attorney involved in the case. The facts and circumstances of this case simply do not support Kuhn's argument that the district court should have limited the payment of attorney's fees to an hourly market rate for the city of Akron, Ohio. The issues litigated in this case are fairly complex, thus making it difficult to find competent and skilled counsel in law firms willing to undertake the risk and expense of pursuing this type of civil rights action. Kuhn's own expert witness testified that the issues in this case may compel a party to look beyond the mere locality to find skilled lawyers to handle the suit. Moreover, consistent with our conclusion in *Wayne,* it was not an abuse of discretion for the district court to look beyond the area of Akron to apply local market rates for attorney's fees. Therefore, the district judge was not limited to the city of Akron for determining market rates for attorney's fees.

Second, Kuhn claims that the number of hours for which compensation was requested should have been substantially reduced because some of the hours were undocumented. It is true that the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *See Hensley,* at 437. The applicant should exercise "billing judgment" with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. *Id.*

**\*\*8** In this case, Sigley provided the magistrate judge with computerized calendars and computerized file information which indicated the dates and times of work performed. These records were submitted as part of Sigley's fee application for the district court's consideration in awarding attorney's fees. The district court, based on this information, determined that Sigley's attorneys deserved the amount of fees awarded in this case for time spent on a contentious and complex civil rights claim. Moreover, we agree with the magistrate judge that the lack of contemporaneous records submitted in this case more likely inured to the benefit of Kuhn, because Sigley's counsel could not possibly capture all of the time spent on the case. Thus, the district court did not abuse its discretion by basing its fee determination on the documentation provided by Sigley.

Third, Kuhn claims that the district judge erred by awarding one of Sigley's attorneys fees for duplicative and unnecessary work. In complicated cases, involving many

lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services. *Northcross,* at 636-37. Such an approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative. *Id.* at 637.

In this case, the labor was divided among the three attorneys for Sigley: Mr. Brodhead, Ms. Cavanaugh and Mr. Mullins. The attorney's fee awarded to Mullins is at issue. The magistrate judge found that Mullin's hourly rate should be reduced from $200 per hour to $125 per hour. The judge further found that there was no duplication other than reasonable conferences and collaborative occasions for the lawyers to bring there efforts together. We have held that time spent by counsel discussing the case is properly compensable, and the mere fact that attorneys confer with one another does not automatically constitute duplication of efforts. *Glover v. Johnson,* 138 F.3d 229, 252 (6th Cir.1998). In this case, the judge noted the significance of Mullin's involvement in the case. Accordingly, there was no abuse of discretion in the district court's compensation of Mullins, and no further modification to Mullin's time or rate is merited.

Finally, Kuhn challenges the district court's award of costs and expenses to Sigley. In particular, Kuhn claims that six items, totaling $2,375.28, should not have been included in the court's determination of reasonable expenses. The contested expenses include two $30.00 lunch bills, one $250 payment to Sara Bush Lincoln identified as legal fees for Dr. Green, and payments of $1650.00, $347.28 and $68.00 to National City Bank, Akron Beacon Journal and Answerphone, respectively, for mock trial costs conducted by Sigley's attorney.

The award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary, and the appellate courts will not normally interfere with the exercise of that discretion. *See Northcross,* at 640. It would be advisable for litigants to obtain authorization from the district court before incurring large items of expense; though failure to do so does not bar reimbursement if the trial court should decide that the expenditures were nevertheless reasonable and necessary. *See id.*

**\*9** There are two separate sources of authority to award out-of-pocket expenses. Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by section 1988. *Id.* at 439. The authority granted in section 1988 to award a reasonable attorney's fee includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney, which are normally charged to a fee-paying client in the course of providing legal services. *See id.* Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of section 1988. *See id.* Section 1988 is to be liberally construed to achieve the public purpose underlying the act. *See id.* at 640.

Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. *See id.* at 639. These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. *See id.* Most of these expenses have long been recoverable in the court's discretion, as costs pursuant to 28 U.S.C. § 1920. *See id.* Section 1920 provides that a judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk or Marshall;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title.

In this case, the district court did not abuse its discretion in awarding expenses in the amount of $45,054.63. The contested expenses associated with the two lunch bills were not included in the application for fees and expenses submitted by Sigley's attorney, even if each expense was included on the firm's invoice which was submitted as an

exhibit. In addition, the $250 payment to Sara Bush Lincoln, identified as legal fees for Dr. Green, were legitimate expenses associated with the provision of medical records to Dr. Green and the taking of his deposition in Mattoon, Illinois. The district court reviewed this expense and found it to be a recoverable expense. Furthermore, the costs of obtaining jurors and paying expenses for a mock trial were reasonably determined by the trial court to be recoverable on the theory that the mock trial conferred a benefit to the prevailing party by helping to produce a favorable result. Although this Circuit has never addressed the specific question of whether expenses associated with mock trials are recoverable, the Seventh Circuit has held that award of mock trial expenses is within the discretion of the district court. *Charles v. Daley,* 846 F.2d 1057, 1076-77 (7th Cir.1988). Thus, based on the foregoing reasons, the district court's award of litigation expenses was not unreasonable.

V.

***10** Accordingly, we AFFIRM the district's court's decision.
C.A.6 (Ohio),2000.
Sigley v. Kuhn
205 F.3d 1341 (Table), 2000 WL 145187 (6th Cir.(Ohio)) Unpublished Disposition

**Briefs and Other Related Documents (Back to top)**

- 99-3531 (Docket) (Apr. 26, 1999)
- 98-3977 (Docket) (Aug. 27, 1998)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.