UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANTHONY RIGGINS,**                                Case No. C-1-01-503

    **Plaintiff,**

**Vs.**                                              JUDGE BARRETT

**FORREST HUNT, et al.,**

    **Defendants.**

### DEFENDANT'S MOTION CONTRA TO PLAINTIFF'S MOTIONS IN LIMINE TO EXCLUDE DEFENSE EXHIBITS AND PLAINTIFF'S PRIOR PRISON RECORD AND MEMORANDUM IN SUPPORT

    Defendants, Lt. Forrest Hunt, Lt. Jerry Wells, and Lt. Anthony Gannon, respectfully move this Court to deny plaintiff's motions in limine. Plaintiff's counsel filed a motion in limine to exclude defendants' exhibits claiming that she had not received the exhibits; plaintiff claims that defendants have violated a court order. However, Plaintiff's counsel has had possession of all the exhibits (with the exception of the plaintiff's indictment/ jury conviction and the most recent self-mutilation records of plaintiff) from the prior trial of 2003. Plaintiff has had the indictment and jury conviction documents since at least when the motion to dismiss was filed (12/05); also, the indictment and jury conviction are documents which plaintiff himself should have provided to his counsel. The most recent self-mutilation records stemmed from when plaintiff ran his head into the bars of his cell last month (July 2006). Counsel for defendants obtained the records at the same time as the plaintiff's counsel did just prior to the last pre-trial in this case. This honorable Court is aware of the transfer of these records among counsels.

Defendant will now address each of plaintiff's arguments.

**Exhibits A-D & G-O**

Plaintiff argues that defendants have not produced these exhibits, but all of these exhibits were provided prior to the 2003 trial. These exhibits were part of the defendants' exhibit book from 2003. Additionally, plaintiff argues that these documents are irrelevant (violating FED. R. EVID. 402) as well as misleading and confusing (violating FED. R. EVID. 403). Plaintiff does not extrapolate as to how said exhibits are irrelevant. Further, there is no analysis on how these documents are either misleading or confusing. All the documents in question are not in-depth subjects, they speak for themselves. Additionally, there is no analysis as to why certificates of commendation and applications for employment would be confusing to a jury. Therefore, there is no reason articulated as to why these exhibits should be excluded from the trial.

**Exhibits R-Z**

Plaintiff again argues that these exhibits should also be excluded because they were never produced in discovery. These documents were also provided as part of the 2003 exhibit book. All of these documents were obtained through plaintiff's own subpoena. Plaintiff's counsel had issued a subpoena to the Ohio Department of Rehabilitation and Corrections (hereinafter referred to as "ODRC") to obtain plaintiff's records; the ODRC provided an open file which was voluminous. In fact, it was said that plaintiff had the largest "Rules Infractions Board" file in the institution. ODRC made said records available to counsel for plaintiff as well as counsel for defendant. All records were available to both counsels. Each counsel was given the opportunity to copy any record he or she chose to do so. The fact that plaintiff's counsel did not copy the

records which were not beneficial to plaintiff's case does not mean that they were not "produced" in discovery. All records were laid out on tables for each counsel to peruse through at will. Each counsel was given the opportunity to mark the documents that he or she wanted copied and then the Warden's secretary copied all the marked documents and forwarded them to counsel. Plaintiff grants that he was aware of these exhibits prior to the 2003 trial. Plaintiff has been aware of these exhibits for nearly three years, but has chosen to ignore them in a hope to get this court to exclude them.

Plaintiff further argues that they should be excluded under FED. R. EVID. 403 and 404(b). Defendants will address these arguments as to each individual exhibit.

### R: "Notice of intent to sue"

Plaintiff argues that this exhibit is irrelevant and therefore should be determined to be inadmissible. However, this exhibit is relevant to show motive and intent on the part of the plaintiff. Because it goes to show motive and intent, it has the tendency to make the existence of other facts that are of consequence to the determination in this case more probable than it would without the exhibit. Therefore, it should be deemed relevant under FED. R. EVID. 401, and therefore admissible under FED. R. EVID. 402.

### S: Attempts to Establish Relationships

Plaintiff contends that this exhibit is improper character evidence in violation of FED. R. EVID. 404(b). However, under 404(b), such character evidence is admissible to show motive or intent. Defendants contend that this exhibit shows motive and intent on the part of plaintiff. The disciplinary records contained within this exhibit show a repeated pattern of activity by the plaintiff which defendants contend rises to motive. Additionally, in *Young v. Rabideau* (1987), 821 F.2d 373, the Seventh Circuit Court of

Appeals held that "evidence of inmate's prison disciplinary history was admissible to show intent and absence of accident in connection with inmate's poking officer in face and grabbing chain out of officer's hand." That case involved an inmate bringing a civil rights action against two corrections officers, alleging excessive force was used against him. Defendants contend that this court should follow the persuasive authority of the 7th Circuit, and find that exhibit S and its disciplinary records shows intent on the part of plaintiff.

Plaintiff further argues that this exhibit is more unfairly prejudicial than probative, in violation of FED. R. EVID. 403. However, there is no analysis to support this contention. Because this exhibit shows motive on the part of plaintiff, coupled with the fact that plaintiff cannot articulate a reason as to why it violates R. 403, this exhibit should be admitted into evidence.

### T: Assaultive Behavior

Plaintiff contends that this exhibit should also be excluded because it violates R. 404(b). However, these records are exactly what was allowed into court as evidence in the *Young* case mentioned above. Repeated instances of assaultive behavior show intent on the part of the plaintiff, and therefore should be admissible under R. 404(b) and the *Young* case. In addition, if the defendant(s) were aware of plaintiff's reputation for his assaultive behavior, and if the evidence demonstrates such examples of plaintiff's assaultive behavior which formed his reputation, then said evidence should be admitted.

Additionally, in *West v. Love* (1985), 776 F.2d 170, the Seventh Circuit Court of Appeals held that "evidence that a scuffle among inmate and officers took place in confinement unit reserved for inmates with propensity for violent behavior was

inadmissible 'character evidence,' but rather was relevant to issue of whether force used against inmate was excessive or reasonable under the circumstances." Defendants contend that this evidence of multiple assaults on the part of plaintiff should be admitted on the same grounds. This court can find that this evidence is not character evidence, but rather is used to determine the issue of whether the force was reasonable under the circumstances.

Defendants contend that the above analysis can be applied in favor of T-1 through T-25.

**U: Spitting and Bodily Fluids**

These documents, just like exhibit T, are admissible as evidence of assaultive behavior on the part of plaintiff. Plaintiff is known throughout the institution as spitting on officers as well as throwing his bodily fluids at them. Plaintiff is known as a dangerous inmate. Defendants contend that the same arguments in favor of exhibit T being admitted into evidence apply to exhibit U. Further, defendants contend that this exhibit is relevant to their defense.

**V: Food & Food Trays**

Defendants contend that this exhibit is relevant to show the behavior of plaintiff during his time at the Southern Ohio Correctional Facility. It may sound silly that a "use of force" case begins from the plaintiff keeping a food tray; however, with respect to prisoners at SOCF, many inmates have used food trays to break them and use pieces of the trays as shanks--as weapons. The plaintiff Inmate Riggins in particular has used food trays as weapons. The jury needs to see the whole picture as to the facts of this case.

The remaining conduct reports should be admitted for the same reasons given in response to plaintiff's motion in limine.

**XYZ: Note Showing Limp/Shorter Leg**

Defendants argue that this exhibit is relevant to show pre-existing injuries that plaintiff possessed. This is highly relevant in order to show that the injuries that plaintiff is claiming are from a pre-existing injury or condition. Plaintiff further argues that the exhibit should be excluded because it contains a psychological record on plaintiff that could be confusing. However, the document in question speaks for itself. Therefore, this exhibit should be admitted into evidence.

**BB, MM, NN, OO: Pictures of shoulder and holding cell**

Plaintiff argues that the photographs in question are not accurate and would be confusing and misleading to the jury. Plaintiff's reasoning to support a contention that they are not accurate is based on the fact that they are enlarged. However, the photograph is an accurate depiction of Inmate Riggins' shoulder. Defendants have not enhanced the photograph in any manner whatsoever. The photograph shows that the perforations from the holding cell match the "red dots" on the shoulder of the plaintiff. Defendants contend that Plaintiff has mutilated and harmed himself by running himself into the holding cell. Defendants contend that plaintiff did not sustain the injuries when plaintiff was subdued in J-block. Defendants contend that plaintiff injured himself. The new documents that were provided at the last pre-trial in this matter additionally show that the plaintiff injures himself. Plaintiff had run his head into the bars of his cell where he had to be treated for head lacerations.

These exhibits must be admitted to explain to the jury the mindset of the plaintiff. Most jurors have no concept of life in a high security penitentiary. Most jurors would not understand the fact that a person would try to hurt himself such as the way that plaintiff has tried to hurt himself. Without the admission of direct evidence, it seems unbelievable that someone would run himself into a holding cell, or run his own head into cell bars. Further, plaintiff argues that the admission of these exhibits will be unfairly prejudicial. However, there is no argument to support this contention. The fact that the exhibits are detrimental to the plaintiff should not govern the decision of admission or exclusion. The fact that the marks on defendant's shoulder match the perforations of the holding cell demonstrates what actually happened. If plaintiff's exhibits demonstrating the injuries that he claims he received as a result of the defendants' actions are admitted, then *all* of his records and photographs should be admitted—not just the records and photographs that benefit him. A complete picture must be shown to the jury.

**PP: Assault Convictions**

Defendants contend that exhibit PP should be admitted under the same analysis as both *Young* and *West*. Defendants reincorporate the same arguments from above in "T". Therefore, this exhibit should be admitted into evidence.

**QQ: Broken Finger**

Defendants contend that these records are relevant to show pre-existing injuries on the part of the plaintiff. If the jury were to find for plaintiff, they should know of all pre-existing maladies before they make an award determination. Additionally, plaintiff contends that this exhibit is confusing to the jury. It indeed would be confusing to the jury as to "why would plaintiff be asking to be compensated for injuries that he already

had prior to the alleged incident?" Plaintiff does not want the exhibit to be introduced since it will demonstrate his dishonesty in that he is seeking compensation for injuries that he already had before the alleged incident. Knowledge of a prior broken finger would not confuse the jury any more than knowledge of any of the injuries that plaintiff claims. Plaintiffs claimed that they were not given notice of these records; these records were provided at the trial of 2003.

**Exhibit RR**

Plaintiff contends that this exhibit is not only irrelevant, but also hearsay and unfairly prejudicial. These documents are relevant because they show the circumstances and facts surrounding the day the incident occurred. Further, they are not hearsay because they are a record of regularly conducted activity, an exception under FED. R. EVID. 803(6). Because these incident reports are completed *every* time an incident happens within the institution, they qualify as a record of regularly conducted activity, and are thus admissible under R. 803(6). Additionally, there is no analysis by plaintiff as to how this exhibit will unfairly prejudice the jury in this case. Defendants contend that the probative value of this regularly conducted institutional activity far outweigh any prejudice, particularly prejudice not addressed by plaintiff.

**PLAINTIFF'S PRISON RECORD AND CONVICTIONS**

Plaintiff further moves this Court to limit the introduction of his prison record and his prior convictions. Plaintiff Anthony Riggins admits that his convictions of Aggravated Robbery, Possessing a Weapon Under a Disability, and Carrying a Concealed Weapon (Inmate #A188083.00) are all admissible since he is currently serving a sentence for same. Plaintiff is also currently serving sentences for his assaults on

defendants Forrest Hunt and Jerry Wells. The assaults upon Forrest Hunt and Jerry Wells and plaintiff's subsequent convictions are the same incident as this case. There is no sound basis for exclusion of the most current convictions of plaintiff.

With respect to his prior convictions, to wit: Aggravated Robbery in 1980 (inmate #R112883.00) and another Aggravated Robbery in 1983 and another Carrying a Concealed Weapon in 1983 (Inmate #A173275.00), defendants contend that the probative value of the convictions, repeat Aggravated Robberies and carrying a Concealed Weapon, substantially outweighs the prejudicial effects. The fact that plaintiff has been convicted to such violent crimes is the basis for why he is even housed in SOCF. The crimes go to defendants' knowledge of plaintiff's reputation for violence. The aggravated robberies all show the violent tendencies of the plaintiff; the plaintiff would not have three numbers for aggravated robberies unless he was excessively violent.

With respect to the plaintiff's prison record, the plaintiff relies upon Fed. R. Evid. 404(b) to exclude evidence from plaintiff's rules infraction board (RIB) file. Fed. R. Evid. 404(b) states as follows:

> (b) Other Crimes, Wrongs, or Acts.- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therein. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused*, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of such evidence it intends to introduce at trial.

The advisory committee notes for the 1974 enactment, Note to Subdivision (b), states the following:

> This rule provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character but *may* be admissible for other specified purposes such as proof of motive.
> Although your committees no necessity in amending the rule itself, it anticipates that the use of discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion or waste of time. Senate Report No1 93-1277.

The United States Court of Appeals for the Sixth Circuit sets forth the standards for the balancing test once the trial judge determines that the proponent of the evidence has established a permissible use. The Appellate Court states as follows in *U.S. v. Miller* 115 F. 3d 361 (6th Cir.):

> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove <u>motive</u> or <u>intent</u> or <u>identity</u> [or] some other purpose, is "material"; that is whether it is "in issue" in the case. If the court finds it is, the court must <u>then</u> determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the <u>specific</u> purpose for which they may consider the evidence.

The defendants, Hunt, Gannon, and Wells, each contend that the evidence from Anthony Riggins' RIB file is to be used for proof of his motive, intent, and/or plan in bringing the prisoner's rights case. In *West v. Love* (1985), 776 F.2d 170, the Seventh Circuit Court of Appeals held that "evidence that a scuffle among inmate and officers took place in confinement unit reserved for inmates with propensity for violent behavior was inadmissible 'character evidence,' but rather was relevant to issue of whether force used against inmate was excessive or reasonable under the circumstances." Further, in *Young v. Rabideau* (1987), 821 F.2d 373, the Seventh Circuit Court of Appeals held that

"evidence of inmate's prison disciplinary history was admissible to show intent and absence of accident in connection with inmate's poking officer in face and grabbing chain out of officer's hand." That case involved an inmate bringing a civil rights action against two corrections officers, alleging excessive force was used against him. Defendants urge this court to follow the above persuasive holdings and determine that this evidence is admissible to show intent.

Plaintiff Anthony Riggins has a lengthy record of infractions. Said infractions include such offenses as "Possession of weapon or contraband," "Disrespect," "Disobeying," "Fighting," "Assault," "Creating a disturbance," "Giving False information," among other things. The above stated offenses demonstrate the motive and plan of the plaintiff in "setting up" the defendants. Plaintiff repeatedly instigates arguments and fights with corrections officers as well as inmates in order to move from one place to another both inside institutions and from institution to institution. Plaintiff had desires to go to general population just prior to the alleged incident. The April 25, 2000, outpatient psychiatrist's progress note states:

> Subjective: 1) "I am staying out of trouble for the past two months. I have no tickets. In my cell I read. I would like to go to general population. Let me go to Oakwood first." He was told there was no need to go to Oakwood, the team will decide whether he needs to go to Oakwood or not.

Obviously, the plaintiff had prior calculation and design to leave a month prior to the incident. The Plaintiff is aware that he has to be transferred out of Southern Ohio Correctional Facility prior to even being considered for parole. The plaintiff requested to be transferred to Oakwood, which is a mental health treatment center where prisoners only stay for a limited time period and then are sent back to their prior institution, in this

case, Southern Ohio Correctional Facility.  On January 6, 2000, Gary E. Beven, M.D. states the following:

> "I reviewed Mr. Riggins chart.  It was brought to my attention that he remained on the list for inmates to possibly return to the RTU. (residential treatment unit)  I am very familiar with Mr. Riggins as I treated him as his attending psychiatrist for quite some time on the J4 SMI range.  Mr. Riggins was discharged from that range because of his *highly disruptive behavior and his extreme antisocial personality traits*.  On 9/30/99 the treatment team discussed his case and determined that principally this inmate was an inmate who exaggerated symptoms of mental illness but who in fact did not appear to be severely mentally ill.  At the present time he is on Dr. Bawazer's caseload and is being prescribed Loxitane and Benadryl.  Although I am highly suspicious this inmate is not actually severely mentally ill, I will defer to Dr. Bawazer's opinion at this time as he is on Dr. Bawazer's caseload list.  Nevertheless, Mr. Riggins should not be returned to the RTU as the risk of him being transferred there and disturbing the entire therapeutic environment far outweighs any potential benefit Mr. Riggins would receive by being sent back there.

The plaintiff had unsuccessfully attempted to be transferred from J-block using the vehicle of mental health complaints.  Plaintiff had been housed in J-block of the Southern Ohio Correctional Facility, the highest security in the institution, since approximately February 1999.

The defendants claim that it is necessary to introduce the plaintiff's RIB file, his medical records, and his mental health records as a whole in order to demonstrate his proof of motive, his intent, and/or his plan to obtain a transfer.  Even in plaintiff's complaint, his prayer for relief requests "freedom from prison."

The defendants are not wishing to introduce the rules infractions to show actions in conformity therewith, rather defendants wish to introduce the evidence to demonstrate motive, plan, intent, the information behind plaintiff's reputation, etc.

**CONCLUSION**

For the foregoing reasons, the defendants respectfully request this Court to deny the plaintiff's motions in limine and permit the defendants to present their exhibits and to cross-examine the plaintiff using his prison record as well as his convictions.

    Respectfully submitted,

    /s/ Marie Hoover

    R. Tracy Hoover #0039610
    Marie M. Hoover #0063254
    Trial Counsel for Defendants
    621 7th Street
    Portsmouth, Ohio 45662
    (740) 354-1000
    Fax: (740) 353-0661
    hooverlawgroup@yahoo.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically on the 13th day of August, 2006. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

    /s/ Marie Hoover

    R. Tracy Hoover #0039610
    Marie M. Hoover #0063254
    Trial Counsel for Defendants