**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY RIGGINS,** | : | **Case No. 1:01-CV-503** |
| | : | |
| **Plaintiff,** | : | **Judge Barrett** |
| | : | |
| **vs.** | : | **PLAINTIFF'S MEMORANDUM** |
| | : | **IN OPPOSITION TO** |
| **FORREST HUNT, et al.,** | : | **DEFENDANTS' HUNT AND** |
| | : | **WELLS' MOTION FOR  NEW** |
| **Defendants.** | : | **TRIAL AND RENEWAL OF** |
| | : | **MOTION FOR JUDGMENT** |
| | : | **NOT WITHSTANDING THE** |
| | : | **VERDICT** |

It is unclear under what Federal Rule of Civil Procedure Defendants Hunt and

Wells base their motion (Doc. 173).  They cite to no Rule but state they "renew their

Motion for Judgment Not Withstanding the Verdict which was made on the twenty-fourth

(24th) day of August, 2006."  (Doc 173 p. 1).  This response assumes Defendants are now

making a Fed. R. Civ. Proc. 50(b) motion for judgment as a matter of law and a Fed. R.

Civ. Proc. 59 Motion for new trial.  For the reasons stated below, their motion should be

denied.

### I.     FED. R. CIV. PROC. 50(B) MOTION SHOULD BE DENIED

#### A.  Defendants Are Precluded From Making A Rule 50(B) Motion

To preserve the right to make a Rule 50(b) motion for judgment as a matter of law

after trial, the Defendant must make a Rule 50(a) motion at the close of all evidence.

Fed. R. Civ. Proc. 50(b).  In making a Rule 50(a) motion, the party must "specify the

judgment sought and the law and facts on which the moving party is entitled to the

judgment." Fed. R. Civ. Proc. 50(a).  This requirement is met only if motion satisfied the

purpose of this requirement - to alert the court and the opposing counsel of the

deficiencies that are being alleged. *Kusens v. Pascal,* 448 F. 3d. 349, 361 (6th Cir. 2006) (holding that, while a close question, a statement by the defense that the public policy claim was not argued or mentioned in the opposing counsel's opening argument was sufficient notice of deficiencies).

In the case at bar, Defense counsel merely said at the close of all evidence that she was renewing her Rule 50 argument.[1] This is insufficient to preserve the right to make a Rule 50(B) motion. *See*, *First Sec. Bank of Beaver, Okl v. Taylor,* 964 F 2d 1053 (10th Cir. 1992) (motion by movant stating that evidence was insufficient to support the verdict, but without explaining the legal significance of the evidence did not constitute appraisal of the grounds of the motion, and thus the motion was denied); *Gierlinger v. Gleason*, 160 F. 3d 858, 869 (2nd Cir. 1988) (Rule 50 motion must at least identify the specific element that the defendant contends is insufficiently supported); *Superturf, Inc. v. Monsato*, 660 F 3d 1275, (8th Cir. 1981) (motion requesting a directed verdict on the "federal law issues of liability" provided insufficient grounds); *Guest House Motor Inc. v. Duke*, 384 F. 2d 927 (5th Cir. 1967) (failure to state specific grounds when making a Rule 50 motion causes denial of that motion to be proper); *Massaro v. US Lines Co.,* 307 F 2d 299, 303 (3rd Cir., 1962) (Rule 50 specific ground requirement was not met when the moving attorney stated, 'Under all of the evidence, your verdict in the third-party action must be in favor of the third-party plaintiff').

### B. Standard For Ruling On A Rule 50(B) Motion

A Rule 50(b) motion may only be granted:

---

[1] Plaintiff has ordered the transcript of the Rule 50 motion but the transcript was unavailable at the time of this filing. Once the transcript it received this argument may be revised.

> when viewing the evidence in a light most favorable to the non-moving party,
> giving that party the benefit of all reasonable inferences, there is no genuine issue
> of material fact for the jury, and reasonable minds could come to but one
> conclusion in favor of the moving party.

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005), *rehearing en banc denied* (Jun

08, 2005), *cert. denied* 126 S.Ct. 624 (2005). In reviewing a Rule 50 motion, the Court

must disregard all evidence in favor of the defendants that the jury was not required to

believe.

> [I]n entertaining a motion for judgment as a matter of law, the court should
> review all of the evidence in the record. In doing so, however, the court must
> draw all reasonable inferences in favor of the nonmoving party, and it may not
> make credibility determinations or weigh the evidence. 'Credibility
> determinations, the weighing of the evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not those of a judge.' Thus, although
> the court should review the record as a whole, *it must disregard all evidence
> favorable to the moving party that the jury is not required to believe. That is, the
> court should give credence to the evidence favoring the nonmovant as well as that
> 'evidence supporting the moving party that is uncontradicted and unimpeached,
> at least to the extent that that evidence comes from disinterested witnesses.*'

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2109

(2000) (citations omitted) (emphasis added).

Defendants argue that the Court improperly denied admission of certain evidence,

yet they do not articulate how the Court's evidentiary rulings entitle them to a judgment

as a matter of law in their favor, nor can they. Viewing all the evidence in Plaintiff's

favor, viewing all the inferences in Plaintiff's favor, and disregarding all evidence in

favor of the Defendants that the jury was not required to believe,[2] there are genuine issues

of material fact and reasonable minds could **NOT** come to but one conclusion in favor of

Defendants. Therefore, the motion for judgment as a matter of law must be denied.

---

[2]    The only evidence elicited in Defendants' favor was Hunt's testimony on cross examination that
Riggins put his arms through the bars. Since Gannon and Wells did not corroborate Hunt and Riggins and
Chapman contradicted Hunt, the jury was not required to believe Hunt's testimony.

Defendants only argument is that their attorney's impressions of what the jurors said during an informal meeting after trial led the Defense attorneys to believe the jurors would have wanted to know about the criminal conviction. While Plaintiff's counsel's impression is not the same,[3] what the jury stated to counsel after verdict is inadmissible and cannot be used to support their motion. Testimony from jurors regarding their deliberation or the effect that anything had on their decision is not admissible under Fed. R. Evid. 606(b). Juror's statements regarding their deliberations or how they reached their decision cannot be used as grounds to grant a post trial motion absent exceptional circumstances. *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1140 (9th Cir. 1999) (district court's consideration, in granting a motion for a new trial, of comments made by a juror after the trial regarding the weight they gave certain evidence, was improper and reversed for abuse of discretion.) A juror is not competent to impeach his or her own verdict. *United States v. Gonzales*, 227 F.3d 520, 523 (6th Cir. 2000). In *Gonzales*, the Sixth Circuit, citing a long common law history of excluding juror testimony, found that "Because Rule 606(b) explicitly disqualifies juror testimony regarding jurors' mental processes in connection with deliberations, juror statements were not, and are not, admissible to support the grant of a new trial." *Id.* at 525.

### C. The Facts Support the Jury's Verdict

On August 24, 2006 the jury rendered a verdict for Plaintiff Riggins against Defendants Hunt and Wells. The jury awarded Riggins $25,000 in compensatory damages for his injuries and $75,000 in punitive damages against Hunt and $25,000 in

---

[3]    When the Judge told the jurors in the post-trial meeting that Riggins had been convicted of assault in criminal court and Plaintiff's counsel stated that Riggins did not testify in that case, none of the eight jurors stated that such information would have changed their minds.

4

punitive damages against Wells.  There was more than sufficient evidence, most of if undisputed, most of it corroborated, to support the jury's verdict.

Mr. Riggins testified that on May 12, 2000 he received the wrong dinner tray.  He told rookie female officer Chapman he wanted a substitute tray.  When she did not know what to do, Riggins asked for a white shirt and handed Chapman the tray.  She handed it back to him in case he never got another tray.  Wells even testified that Chapman handed Riggins the tray back.  Riggins never refused to give her the tray.

Wells and Hunt watched all this unfold.  Realizing Chapman made a mistake, Hunt told Chapman to return to the booth.  Hunt decided he and Wells were going to go get the tray back.  Hunt needed  to win this one over the inmate.  Hunt testified his life was all about victories.  Hunt told Chapman to switch posts with him and give him her equipment (radio, cuffs, PR24).  Gannon joined Hunt and Wells and the three officers went to Riggins' cell to get the tray.

When they arrived, Riggins was on the toilet.  Hunt removed the cups and jumpsuit from the bars so nothing would block the door from sliding open.  Riggins asked for a white shirt.  No white shirt was called.  Hunt then reached into the cell to grab the food tray from the bed.  Riggins snatched it off the bed and moved it to the back of the cell.  Wells confirmed that Riggins moved the tray.  Hunt called Riggins a fag and a nigger.  Neither Hunt nor Wells denied any of this.

Hunt then ordered Chapman to open "fucking cell 71."  Hunt and Wells drew their PR-24s.  Riggins realized he was about to be beaten and did all he could to protect himself – he backed up into his cell.  Hunt came in swinging his PR-24 and hit Riggins' left hand, breaking a bone.  Hunt never denied doing this.  Wells then flat chopped

Riggins, breaking his right clavicle. Wells admitted to this. Riggins fell to the ground and tried to crawl out of the cell to get someone's attention, but the defendants fell on top of him and continued to punch and stomp him. Neither Wells nor Hunt denied this.

Clearly these undisputed facts supported the jury's verdict. Defendants presented another version of facts to the jury that was, in a word, incredible. Hunt was the only witness to testify that Riggins put his arms through the bars and grabbed Hunt by the back of the head. Hunt testified to this only on cross examination, as witness in Plaintiff's case in chief. Hunt chose not to testify in his own defense to further explain his version of what happened. Hunt's co-defendants Wells and Gannon never testified that Riggins grabbed Hunt. Officer Chapman testified that she did not see Riggins put his arms through the bars, even though she was watching the whole time, and black arms are clearly visible on the video monitor.

Hunt's story is even more unbelievable when one considers that Hunt did not react when he was allegedly grabbed. He admitted he did not put his arms up, he did not grab Riggins' arms, he did not back up, he did not duck down: Hunt did nothing to break Riggins' hold. Hunt's response was to use his right hand to call Chapman on the phone to open the cell door while simultaneously using his left hand to hit his man-down alarm on his belt. Hunt's story was even more incredible when the jury understood that if Riggins' arms had been through the bars holding Hunt it would have been impossible for the door to open more than 4 inches – thereby not allowing anyone to enter the cell. No reasonable jury could believe Hunt's incredible, uncorroborated, story.

The final evidence that clearly refutes Hunt's story that Riggins grabbed him is the lack of forensic evidence. Hunt's nose was bloodied and blood was dripping down

his shirt from Riggins' grabbing him. Yet, the scene photographs show blood on the cell

walls and the cell and range floors but they show no blood on the front of the bars where

Hunt was allegedly standing when he was grabbed. Lt. Distel took photos of all the

blood. He took no photos of blood on the bars because they did not exist.

Given the evidence submitted at trial, the inferences in favor of Riggins, and

discrediting Hunt's story that Riggins assaulted him, the jury was left with no fact

disputes and could come to but one conclusion: the Defendants used excessive force on

Anthony Riggins. Therefore, there are no grounds for a judgment for Defendants or a

new trial and the Defendants' motion should be denied.

**D.  The Court Did Not Commit Error In Its Evidentiary Rulings**

**1.      The Court properly excluded evidence of the criminal conviction, the RIB records, and the characterization J-Block prisoners as an assaultive and predatory unit**

Defendants raise the same arguments they made in their motion in limine and now

argue that the exclusion of the criminal conviction, the RIB ruling,[4] and the

characterization of J-Block prisoners[5] should have been admitted. The Court ruled prior

to trial, after full briefing and several oral arguments, that the prejudicial effect of the

conviction outweighed the probative value. Doc. 157. The Court also ruled that the RIB

records were irrelevant but could be used to impeach. Doc. 157. The Court ruled orally

before trial that references to J-Block could include explaining that the inmates in J-

Block were kept in a controlled situation and celled there for security reasons, but that

---

[4]      Defendants motion should be denied because they did not offer any evidence of the RIB conviction. In fact it was Plaintiff who had included the RIB conviction in his exhibit book (Pl. Ex. 1029) and later withdrew it from the book in light of the Court's ruling (Doc. 157).

[5]      Defendants motion should be denied because they did not offer any evidence of the characterization of the J-Block prisoners are assaultive or predatory.

reference to J-Block inmates as assaultive would not be permitted.  The Court's rulings on this evidence were proper.

First, the exclusion of this evidence must be viewed in concert with the excluded evidence Plaintiff attempted to submit:  evidence from two use of force reports including findings that defendants actions violated policy, used bad judgment, and told stories that were inconsistent; evidence that the State would not defend the Defendants in litigation because it found their actions to be outside the scope of their authority; and evidence that the Defendants were disciplined by their employer for their actions.  The Court excluded all of Plaintiff's proffered evidence.  Doc. 157.  In so doing, the Court articulated that its rulings "are generally based upon its finding that the facts which are relevant are those related to the events on May 12, 2000; and the events before or after that date are not relevant."  Doc. 157.  All the evidence of other person's conclusions as to how the parties behaved was excluded – whether the evidence was offered by Plaintiff or Defendant. The Court's rulings excluding Defendants' evidence were consistent with the Court's rulings excluding Plaintiff's evidence.

a.    The criminal conviction was properly excluded

Defendants argue that the criminal conviction is proper character evidence under Fed. R. Evid. 404(b).  Plaintiff moved to exclude the criminal conviction for assault based under Rule 403, since the probative value was substantially outweighed by the danger of unfair prejudice.  The Court ruled accordingly.  (Doc. 157).

The evidence of the criminal jury's verdict against Mr. Riggins, in a case where he did not even testify, suggests to a civil jury that a jury has already determined the essential facts of the civil case.  A civil jury is very likely to be prejudiced by this

evidence and to substitute the criminal jury's findings for their own. "[W]hether such evidence is admissible for impeachment purposes depends upon a careful balancing, under Rule 403, Federal Rules of Evidence, in order to determine if the probative value of the evidence is 'substantially outweighed' by its potential for 'unfair prejudice.'" *Cook v. Greyhound Lines, Inc*., 847 F. Supp 725, 736, D. Minn. (1994) (declining final decision on admissibility of party's felony record).

Evidence has been found to be unfairly prejudicial if it suggests a decision based on impermissible grounds. The Sixth Circuit has interpreted Rule 403 such that "unfair prejudice" means evidence that "must suggest a decision on an impermissible basis," rather than simple damage to a case because of the probative value of the evidence. *U.S. v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993), citing *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988) (upholding the District Court's decision to include testimony regarding DNA evidence on the basis that the prejudicial value did not substantially outweigh the probative value.)

The Sixth Circuit Court has acknowledged that judicial findings may get undue weight from a jury and this fact has been considered in examining prejudicial value under Rule 403. *U.S. v. DeSantis*, 134 F.3d 760, 766 (6th Cir. 1998). In *DeSantis*, the Court found error in the lower court decision to allow the defendant to be required to read into the record a copy of an Ohio Court of Appeals decision affirming previous lower court decision on certain relevant issues for the purpose of impeaching his testimony. *Id.* While the court based the decision that the evidence was inadmissible on Fed. R. Evid. 608(b), the concurrence would have come to the same conclusion under Rule 403. The judge writing the opinion acknowledged that the probative value of the evidence may

have been outweighed by the fact that the jury may well have given the previous judicial

finding undue weight. *Id.*

Other Circuits also consider the possibility of previous adjudicative outcomes

being giving undue weight in determining prejudice under Rule 403.  In a case identical

to the case at bar, *Diaz v. Cianci*, 737 F.2d 138, 139 (1st Cir. 1984), evidence of a

plaintiff arrestee's conviction for assault of the arresting police officers was found to

have been properly excluded from a subsequent civil suit for damages based on the same

incident.  The evidence of the conviction was prejudicial in that it may have been

considered conclusive as to whether the amount of force used by the police was proper.

"Since the jury would be able to hear all of the first hand evidence relating to whether the

force used by the police was reasonable, the value of introducing the conclusion of a prior

fact finder was considered substantially less weighty than the potential unfair prejudice it

might cause." *Id.*  Similarly, in *Williams v. Drake*, the court upheld a trial court decision

to exclude a "guilty plea" entered by a prison inmate in front of a prison disciplinary

board from a subsequent §1983 suit, in which the prisoner was a plaintiff, based on the

same incident.  146 F.3d 44, 47 (1st Cir. 1998).

In *Faigin v. Kelly*, the court upheld a lower court decision to exclude evidence

regarding a sanction order issued after previous litigation between the parties.  184 F.3d

67, 80 (1st Cir. 1999).  The court stated on the issue:

> Looking at the other pan of the scales, the district court had solid reasons for
> concern about the untoward effects of the proffered evidence.  A lay jury is quite
> likely to give special weight to judicial findings merely because they are judicial
> findings . . . .  Consequently, courts, recognizing the attendant danger of jury
> confusion and unfair prejudice, frequently have approved the exclusion of judicial
> findings, convictions, and similar evidence on Rule 403 grounds.

*Id.* Likewise, in *Gil-De-Rebollo v. Miami Heat Associations, Inc.*, 137 F.3d 56, 64 (1st Cir. 1998) a decision to exclude evidence of a criminal misdemeanor conviction in a related civil trial was upheld. A basketball spectator was injured by a team mascot and then successfully brought criminal charges against the mascot. *Id* at 60. The criminal charges were excluded from the subsequent civil suit by the spectator because, "[u]nder the circumstances, admission of [the] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own." *Id.* at 64.

For these reasons, evidence of the criminal conviction was properly excluded under Fed R. Evid. 403. However Defendants cite to several cases to support the admissibility of the criminal conviction, all of which are easily distinguished. In *Emich Motors Corp. v. General Motors Corp*., 340 U.S. 558, 71 S.Ct. 408 (1951), a restraint of trade case, the plaintiff was permitted to introduce GM's anti-trust criminal conviction as evidence in the subsequent civil case. This was permissible under the Clayton Act, which Congress passed to allow third parties harmed in restraint of trade cases to use criminal convictions as evidence in subsequent civil actions. The Court held that under estoppel theories the conviction was admissible since GM had already been tried on the same elements in the criminal case. (The Court did not evaluate the evidence under a FRE 403 theory.) As this Court properly held, estoppel does not apply in this case since the claim of excessive force was not an element of the criminal conviction. (Doc. 140).

Likewise, the Defendant's reliance on *Palmerin v. City of Riverside*, 794 F.2d 1409 (9th Cir. 1986) is misplaced. In *Palmerin* the plaintiffs had pleaded guilty and admitted in their pleas that the force they had used against the officers exceeded that permitted by law. *Id*. at 1414. The Court held that their admissions about force were

relevant in enabling the jury in the subsequent civil rights case to assess the appropriateness of the officers' response and that any prejudicial effect was substantially outweighed by their probative value. *Id*.  In the case at bar Riggins did not plead guilty, nor had he made any admissions, therefore the analysis in *Palmerin* is unhelpful.

Defendants' reliance on  *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992) as authority for admitting the conviction is similarly misplaced.  In *Hancock* the plaintiff had **pled guilty** in a prior criminal case.  The court reasoned that the guilty plea was an admission of a party opponent and not hearsay.  The court did not engage in a 403 balancing test analysis.

Finally, Defendants argue that Plaintiff "opened the door" to their asking Plaintiff on cross-examination about his criminal conviction.  Defendants quote Plaintiff as having testified "and now I have to do more days in jail" but they do not cite to transcript for this quote.  Furthermore, the remark is taken out of context.  Plaintiff recalls testifying that while he was being attacked he was thinking that he'd get a ticket.  This testimony was discussed at side bar and the Court properly ruled that Riggins' testimony did not "open the door" to cross examination about his criminal conviction.

For all these reasons, the Court's exclusion of the criminal conviction was proper.

b.    The RIB conviction was properly excluded

Defendants argue that Riggins' RIB conviction[6] for the assault on Hunt should have been admitted as character evidence.  The Court excluded this evidence as irrelevant but ruled they could be used solely for impeachment.

---

[6]    The burden of proof in an RIB hearing is "some evidence."  That is, if the prison can show "some evidence" that the inmate violated a prison rule, the prison will be convicted.  Such a ruling is clearly irrelevant and should carry no weight in a federal court.

Fed. R. Evid. 404(b) provides in relevant part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Furthermore, evidence of other acts is not admissible to prove that the actor has a certain character trait, in order to show that on a particular occasion he acted in conformity with that trait.  *Hynes v. Couglin*, 79 F.3d 285, 290 (2nd Cir. 1996).

Under 404(b), other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b).  Although this is not intended to be an exhaustive list, courts are reluctant to create new exceptions.  *Young v. Rabideau*, 821 F.2d 373, 379 (7th Cir. 1987) (declining to make a new 404(b) exception for establishing bias); *Essick v. Debruyn*, 1995 WL 729313 (N.D. Ind. 1995).

In *U.S. v. Bunch*, 1993 WL 5933, *2 (6th Cir. 1993), a chief jailer was convicted of beating an inmate and willfully denying him medical care.  The defendant claimed the district court erred in excluding the extensive prison disciplinary records of the inmates involved, including records of violent behavior.  *Id.*  The defendant contended that the witness' pattern of conduct presented a common scheme, presumably of being disobedient and violent, and that it also demonstrated the inmates' "state of mind."  *Id.* The Sixth Circuit found that the district court properly refused to admit the records in question after performing a Federal Rule of Evidence 403 balancing test and determining that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.  *Id*.  The court stated "[i]t is not enough to suggest that a prior

disciplinary violation for assaulting a prison inmate is probative of the witness' intent to start an altercation with defendant." *Id.*

When conducting a Rule 403 balancing test to determine whether the probative value is substantially outweighed by the danger of unfair prejudice, "[t]he danger of unfair prejudice is defined as the likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented..." *West v. Love*, 776 F.2d 170, 174 (7th Cir. 1985). The Defendants sought to admit the RIB conviction for this very, impermissible, basis.

Allowing Mr. Riggins' disciplinary record to be admitted to establish bias, hostility or dislike of corrections officers would also be inappropriate. In both *Young v. Rabideau*, 821 F.2d at 379 (7th Cir. 1987), and *Essick v. Debruyn*, 1995 WL 729313, *3 (N.D. Ind.), the courts declined to make a new 404(b) exception for the purpose of establishing bias. In *Essick*, the defendants, in an attempt to impeach the witnesses' credibility, wanted to admit evidence of statements made by both the plaintiff and his witness regarding acts of misconduct while incarcerated. *Id.* at *1. Although the Seventh Circuit stated that bias, like pattern, may show intent or another Rule 404(b) ground, it is more likely to "prove bad character or a propensity toward violent behavior by inferring that the prisoner acted in conformity with his prior bad acts." *Young*, 821 F.3d at 379. The court, therefore, held that the prison disciplinary record was inadmissible for this purpose. *Id.*

For these reasons, the Court's decision to exclude the RIB conviction was proper and the motion should be denied.

     c.     The reference to J-Block inmates as assaultive and predatory was properly excluded

The Court's decision to exclude reference to J-Block inmates as assaultive is supported by the same analysis of the exclusion of the RIB convictions. Inmates are assigned to J-Block based on their RIB convictions. Thus, to allow Defendants to label Riggins "assaultive" based on his housing assignment would just have been a back door way to get in his RIB conviction.

Defendants argue that evidence of the description of J-Block was relevant to showing whether Riggins' alleged assault on Hunt warranted the defendant's reaction. Doc. 173 p. 5. Defendants cite to *West v. Love,* 776 F.2d 170 (7th Cir. 1985) in support of this argument. In *West*, evidence that the scuffle between the plaintiff and the corrections officers took place in the confinement unit reserved for inmates with a propensity for violent behavior was relevant to the issue whether the force used against West was excessive or reasonable under the circumstances. *Id*. 174. "Defendants' assessment of the danger posed by the situation in that unit bears on the issue whether they acted reasonably and in good faith." *Id*. Had Hunt or Wells testified that they used the force on Riggins to such an extent that they did because they assessed him to be dangerous because he lived on J-Block, the evidence of J-Block may have had some probative value. However, neither Hunt nor Wells testified in their defense of Plaintiff's case; neither Hunt nor Wells testified about their state of mind; and neither Hunt nor Wells argued that the measure of force they used was in response to dangerousness they assessed posed by Riggins living on J-Block. Therefore, Defendants have not shown that the description of J-Block had any probative value at all.

Of course, Defendants were permitted to explain that inmates in J-Block were kept in a controlled situation and celled there for security reasons. For whatever reason they chose not to submit such evidence. Their motion for judgment based on the inadmissibility of the assaultive nature of J-Block inmates was proper and their motion for a judgment or a new trial therefore should be denied.

> **2.     The Defendants did not ever move to admit or proffer evidence from the defendants personnel files, therefore their motion should be denied**

Defendants argue the Court precluded them from even introducing their own personnel records where Hunt had been commended for his military service and defendants had received strong employment evaluations. Doc. 173 p. 7. Defendants cannot move for a Rule 50 motion based on the exclusion of this evidence with they never attempted to offer this evidence, never proffered the evidence and never even testified on their own behalf.[7] The Court never ruled that these personnel documents were inadmissible. In fact, it was the Defendants who moved to exclude Plaintiff from using the Defendants' personnel records. The Court denied Defendants' motion because the Defendants included personnel records in their own exhibit book. (Doc. 157).

> **E.  Even If The Exclusion Of Any Evidence Was Improper, It Was Harmless Error**

Even if the district court abused its discretion in admitting a particular piece of evidence, its decision will not be overturned if it was harmless error; it can be overturned only if it affected the substantial rights of a party. *Balani*, 669 F.3d at 1160; *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

---

[7]       Movants Wells and Hunt were called in plaintiff's case in chief. Defendants did not examine these witnesses in Plaintiff's case, therefore there was not even an opportunity to introduce Hunt's military record or either officer's evaluations.

When assessing whether wrongful admission of evidence affected Defendants'
substantial rights, the inquiry involves an assessment of the likelihood that the
error affected the outcome of the case. *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d
152, 157 (6th Cir. 1988).

Litigants are entitled to a fair trial, not a perfect trial. In 1948 the Federal
Rules were approved, including Rule 61, which has not been amended. Fed. R.
Civ. Proc. 61, instructs that a court must "disregard any error or defect in the
proceeding which does not affect the substantial rights of the parties." The intent
of the rule is to let judgments stand unless an error was committed that "affects
the substantial rights of the parties." In determining whether an error was
harmless, "[t]he entire record must be considered and the probable effect of the
error determined in the light of all the evidence." Wright, Miller & Kane, *Federal
Practice and Procedure: Civil 2d* § 2888, p. 449 (citations omitted). Defendants
have failed to identify errors that affect the substantial rights of the parties. As set
out above, the evidence in support of the plaintiff was very strong. When viewed
in the context of the entire trial the issues raised by the Defendants reflect at most,
only harmless error.

A district court's decision to exclude evidence is reviewed for abuse of
discretion. *U.S. ex rel. A+ Homecare, Inc. v. Medshares Management Group,
Inc.* 400 F.3d 428, 439 (6th Cir. 2005). Even when finding an abuse of discretion,
a decision to exclude evidence will be overturned only when it caused more than
harmless error. *Id. See*, *Conte v. General Housewares Corp.*, 215 F.3d 628, 638
(6th Cir. 2000) (in electrocution case, testimony by witness regarding another

worker's knowledge that electric lines were "hot" was erroneously excluded as hearsay, but error was not so prejudicial as to require a new trial because the evidence would have admitted for only limited purposes and did not speak directly to the knowledge at issue); *Morales v. American Honda Motor Co., Inc*. 151 F.3d 500, 514 (6th Cir. 1998) (in product liability suit, lower court erred in excluding defendant motorbike manufacturer's proffered evidence regarding the Consumer Product Safety Commission's denial of a petition for rulemaking about motorbikes, but this abuse of discretion did not warrant a new trial); *Johnson v. Howard*, 24 Fed. Appx. 480, 490 (6th Cir. 2001) (in civil rights suit by prisoner against corrections officer, trial court applied incorrect standard in excluding evidence of witness' felony convictions under Fed. R. Evid. 403, but error was harmless because court probably would have come to same conclusion.). *See also*, *Wolff v. Moore*, 199 F.3d 324, 329  (6th Cir. 1999) (trial court's erroneous admission of reference to polygraph test in prison civil rights case did not overcome the "credibility and veracity" of the remaining evidence).

While the exclusion of the contested evidence was proper, even if the ruling were improper, pursuant to Fed. Civ. Proc. 61, the ruling was harmless error because there was so much undisputed and corroborated evidence in the record to support the jury's verdict.  Therefore, Defendants' the motion for judgment or new trial should be denied.

## II.    MOTION FOR NEW TRIAL SHOULD BE DENIED

Defendants moved for a new trial "on the grounds that this court excluded evidence of Plaintiff's conviction for assault . . ." (Doc. 173 p. 1).[8] Defendants do not explain further why they are entitled to a new trial, they do not articulate the grounds for a new trial, nor do they cite any case law in support. A motion for new trial will not be granted unless the moving party suffered prejudice. *Barnes v. City of Cincinnati* at 743.

> Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial.

*Id.* at 743. A new trial should not be granted if a reasonable juror could reach the challenged verdict. *Barnes v. Owens-Corning Fiberglas Corp.,* 201 F.3d 815, 820-21 (6th Cir. 2000). Moreover, the court "is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.*

The exclusion of the criminal conviction did not cause Defendants prejudice or change the outcome of the trial. This trial was a swearing match between Riggins and Hunt. The jury found for plaintiff because they did not believe Hunt's story that Riggins

---

[8]    Defendants chose not to move for a new trial based on the weight of the evidence. If they had they could not have prevailed. In deciding a motion for a new trial, the district court sits as a thirteenth juror and considers the weight of the evidence and the credibility of the witnesses to insure that no miscarriage of justice has occurred. *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir. 1998).

> When faced with a challenge directed at the weight of the evidence, the trial court's obligation is to compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences could have been drawn or because other results are more reasonable.

*Porter v. Lima Memorial Hosp.,* 995 F.2d 629, 635 (6th Cir. 1993) (citations omitted); *See also Williams v. United Dairy Farmers*, 188 F.R.D. 266, 274 (S.D. Oh 1999). In *Barnes* the Court held that a district court does not abuse its discretion when denying a motion for new trial based on the weight of the evidence even when the defendant's interpretation of the evidence was reasonable - the Court need only compare the evidence and conclude that the jury's verdict was not against the weight of the evidence. *Barnes* at 743.

put his hands through the bars and grabbed Hunt.  This jury heard Mr. Riggins testify and

believed him.  Mr. Riggins' testimony was crucial to the jury's decision that Hunt and

Wells used excessive force and were malicious and sadistic.  The fact that a criminal jury

convicted Mr. Riggins in a trial where he did not testify would have been meaningless to

this civil jury.  A criminal conviction based on only one side's version of facts has no

probative value.  That is why this Court properly excluded the evidence (see § D(1)(a)

*infra*).  Therefore the defendants are unable to show they were prejudiced from the

exclusion of the conviction and a new trial should be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants Hunt and Wells' motion for judgment and for

new trial should be denied.

> Respectfully submitted,
>
> s/ Jennifer L. Branch
> Jennifer L. Branch (0038893)
> Trial Attorney for Plaintiff
> Alphonse A. Gerhardstein (0032053)
> Attorney for Plaintiff
> GERHARDSTEIN & BRANCH CO., LPA
> 617 Vine Street, Suite #1409
> Cincinnati, Ohio 45202
> (513) 621-9100
> jbranch@gbfirm.com
> agerhardstein@gbfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2006, a copy of the foregoing pleading was

filed electronically.  Notice of this filing will be sent to all parties for whom counsel has

entered an appearance by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.  I further certify that a copy of the

foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S.

mail upon all parties for whom counsel has not yet entered an appearance electronically.

<u>s/ Jennifer L. Branch</u>
Attorney for Plaintiff