# United States District Court for the Southern District of Ohio

Anthony Riggins

**Plaintiff,**

vs.   CASE NO. C-1-01-503

Forrest Hunt, III, et al.

**Defendant.**

# NOTICE OF APPEAL

Notice is hereby given that __Jerry Wells_____, hereby appeal
(here name all parties taking the appeal)
to the United States Court of Appeals for the Sixth Circuit from __Order Denying Defendants' Motion__
(the final judgment) (from an
__for New Trial and Motion for JNOV__ entered in this action on the __19th__ day of
order (describing it))

October_____, 2006__.

(s)_____/s Jerry Wells_____

Address:   275 Mill Branch Road

Greenup, Kentucky 41144

Attorney for:   pro se litigant

6CA-3
1/99

*This document is being filed under R. Tracy Hoover (0039610) electronic case filing number; however, counsel DOES NOT represent Jerry Wells in this matter.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY RIGGINS                                    CASE NO. 1:01-CV-503

        Plaintiff

-vs-                                               JUDGE MICHAEL R. BARRETT

FORREST HUNT, et al.,

        Defendants

**ORDER DENYING DEFENDANTS, HUNT AND WELLS'
MOTION FOR NEW TRIAL AND RENEWAL OF
<u>MOTION FOR JUDGMENT NOT WITHSTANDING THE VERDICT</u>**

This matter is before the Court upon Defendants Forrest Hunt and Jerry Wells' Motion for Judgment Not Withstanding the Verdict and Motion for New Trial. (Doc. 173)

Plaintiff brought a claim under 42 U.S.C. § 1983, alleging that Defendants used excessive and unnecessary force against him in violation of the Eighth Amendment. On August 24, 2006 the jury rendered a verdict for Plaintiff against Defendants Hunt and Wells, but found a third co-defendant, Anthony Gannon, not liable. The jury awarded Plaintiff $25,000 in compensatory damages for his injuries; $75,000 in punitive damages against Defendant Hunt; and $25,000 in punitive damages against Defendant Wells.

**I.**    **<u>ANALYSIS</u>**

While Defendants do not specifically state which rule upon which they rely, the Court reads Defendants' pleading as making a renewed motion for judgment of law under Rule 50(b), and in the alternative, a motion for a new trial under Federal Rule of Procedure

59(a), instead of a motion seeking the grant of a new trial under Rule 50(b).[1]

### A. Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b), which governs renewed motions for judgment as a matter of law, provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
>
> (1) if a verdict was returned:
>
>   (A) allow the judgment to stand,
>   (B) order a new trial, or
>   (C) direct entry of judgment as a matter of law . . .

The Sixth Circuit has cautioned that a distinction is to be made between "Rule 50(b) motions based on a challenge to the facts as found by the jury and those based on purely legal grounds, which take the jury's findings at face value." *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996). Defendants' motion is a challenge to the facts as found by the jury. In a federal question case, the standard applicable to a Rule 50(b) motion is:

> when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.

---

[1] Rule 50 encompasses what was formerly referred to as a motion for a judgment notwithstanding the verdict (JNOV). *See* Fed.R.Civ.P. 50 advisory committee's note (1991) (while continued use of the old terminology is mere "formal error," those terms are misleading and "freighted with inaccuracies"); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir.1994) (explaining how Rule 50(b) now encompasses the former JNOV).

*Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir.), *cert. denied*, 126 S.Ct. 624 (2005); *K & T Enterprises*, 97 F.3d at 175-76. The Court must draw all reasonable inferences in favor of the nonmoving party, but it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). While the Court should review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Id.* (citation omitted). Finally, this Court must "indulge all presumptions in favor of the validity of the jury's verdict," and "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997), *quoting Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996) (internal quotation marks and citations omitted).

The Court finds that viewing the evidence in a light most favorable to Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, there was a genuine issue of material fact for the jury, and reasonable minds could have come to a conclusion other than that in favor of Defendants.

Mr. Riggins testified that on May 12, 2000 he received the wrong dinner tray. He told an inexperienced female officer, Chapman, that he wanted a substitute tray. When she did not know what to do, Riggins asked for a "white shirt," which is a supervisor, and handed Chapman the tray. Riggins explained that Chapman handed the tray back to him

in case he never got another meal tray.

Wells and Hunt watched all this unfold. Hunt told Chapman to return to the control booth and to switch posts with him. Hunt took Champan's equipment--radio, cuffs, PR24-- and together with Wells, went to the range to get the tray back. Gannon joined Hunt and Wells, and the three officers went to Riggins' cell to get the tray. Hunt testified that confrontations such as this were about victories. When they arrived, Riggins testified he was on the toilet. Riggins again asked for a white shirt but none was called at that time. Hunt then reached into the cell to grab the food tray from the bed. Riggins snatched it off the bed and moved it to the back of the cell. Using his radio, Hunt then ordered Chapman to open "fucking cell 71." Hunt and Wells drew their PR-24s. Hunt entered the cell, there was a scuffle inside, and he hit Riggins' left hand with his PR-24. Wells then flat chopped Riggins with his PR-24. Riggins testified that this broke his right clavicle. Riggins fell to the ground and tried to crawl out of the cell to get someone's attention, but Defendants fell on top of him and the fracas continued.

Defendants presented a different story to the jury as to how the incident began. Hunt testified that Riggins put his arms through the bars, grabbed Hunt by the back of the head, and pulled him into the bars. Hunt testified he did nothing to break Riggins' hold, but rather his response was to use his right hand to call Chapman and tell her to open the cell door while simultaneously using his left hand to hit his man-down alarm on his belt. However, neither Wells or Gannon testified that Riggins grabbed Hunt. There was also testimony which indicated that if Riggins' arms had been through the bars holding Hunt it would have been impossible for the door to open more than 4 inches -- thereby not allowing anyone to enter the cell. Further, there was testimony that indicated that if Defendants

opened the cell only to get the tray it would have been a violation of institution policy because cell doors should be opened only with an extraction team present or to prevent serious injury.

In addition, Hunt did not deny hitting Riggins on the hand, and Wells specifically testified that he used the flat chop maneuver on Riggins when he entered the cell. Nevertheless, Lt. Distel testified that he observed no signs of injury as Riggins was led from the cell.

Based on the foregoing testimony, the Court finds that there were necessarily credibility determinations to be made by the jury, and reasonable minds could come to a conclusion other than one favoring Defendants. The Court finds it instructive that the jury reached a separate conclusion as to Officer Gannon, and demonstrates the jury's ability to ferret out the facts. Therefore, Defendants' Renewed Motion for Judgment as a Matter of Law is hereby DENIED.

### B.     Motion for New Trial

A motion for a new trial is governed by Federal Rule of Civil Procedure Rule 59(a), which provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

A motion for new trial will not be granted unless the moving party suffered prejudice. *Barnes*, 401 F.3d at 743. "Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial." *Id.*, citing *Morales v. American Honda Motor Co., Inc.*,

151 F.3d 500, 514 (6th Cir. 1998); *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998) ("Although we find that the district court abused its discretion in excluding this report from evidence, we do not find that a new trial is warranted. Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial.").

Defendants' motion is based solely on the Court's exclusion of evidence. Defendants argue that the Court should have admitted: (1) Riggins' criminal conviction of assault based on the incident; (2) Riggins' Rules Infraction Board ("RIB") records related to the incident; and (3) the characterizations of J-Block prisoners as an assaultive and predatory.

Defendants support their position with their attorneys' impressions of what the jurors said during an informal meeting after the conclusion of trial. The fact that counsel misconstrues and misrepresents these statements, is irrelevant for our purpose, as the testimony from jurors regarding their deliberation or the effect that anything had on their decision is not admissible under Fed. R. Evid. 606(b). Jurors' statements regarding their deliberations or how they reached their decision cannot be used as grounds to grant a post trial motion absent exceptional circumstances. *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1140 (9th Cir. 1999) (district court's consideration, in granting a motion for a new trial, of comments made by a juror after the trial regarding the weight they gave certain evidence, was improper and reversed for abuse of discretion.) A juror is not competent to impeach his or her own verdict. *United States v. Gonzales*, 227 F.3d 520, 523 (6th Cir. 2000). In *Gonzales*, the Sixth Circuit, citing a long common law history of excluding juror testimony, found that "[b]ecause Rule 606(b) explicitly disqualified juror testimony regarding

jurors' mental processes in connection with deliberations, juror statements were not, and are not, admissible to support the grant of a new trial. *Id.* at 525. Therefore, the Court will not consider these statements in determining whether the evidence excluded would have caused a different outcome at trial.

With respect to the excluded evidence itself, the Court notes that Defendants' arguments regarding Plaintiff's assault conviction and RIB records are repetitive of the arguments Defendants made in addressing the pre-trial Motions *in Limine*. In excluding proposed evidence from Plaintiff and Defendants the Court indicated to the parties that its rulings were "generally based upon its finding that the facts which are relevant are those related to the events on May 12, 2000; and the events before or after that date are not relevant." (Doc. 157). Nothing presented during the trial alters this finding.

In ruling upon the Motions *in Limine*, the Court ruled that pursuant to Federal Rule of Evidence 403, the prejudicial effect of Plaintiff's conviction outweighed any probative value, and the jury could have easily been mislead by the conviction. (Doc. 157) Defendants again argue that the criminal conviction is proper character evidence under Federal Rule of Evidence 404(b). However, Rule of Evidence 403 instructs: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ."

Contrary to the representation of certain Defendants in a telephone conference with the Court, Plaintiff's counsel, who was in possession of the transcript, stated that Riggins did not testify at his criminal trial. A criminal conviction based on only one side's version of facts has little probative value. Moreover, a civil jury is very likely to be prejudiced by this evidence and to substitute the criminal jury's findings for their own. Therefore, "whether

such evidence is admissible for impeachment purposes depends upon a careful balancing, under Rule 403, Federal Rules of Evidence, in order to determine if the probative value of the evidence is 'substantially outweighed' by its potential for 'unfair prejudice.'" *Cook v. Greyhound Lines, Inc.*, 847 F. Supp 725, 736, (D. Minn. 1994) (declining final decision on admissibility of party's felony record). The Sixth Circuit Court has acknowledged that judicial findings may get undue weight from a jury and this fact has been considered in examining prejudicial value under Rule 403. *U.S. v. DeSantis*, 134 F.3d 760, 766 (6th Cir. 1998). The Court notes that its ruling did not prevent Defendants from testifying about Riggins actions during the incident, but only excluded the assault conviction itself. The Court finds that exclusion of the conviction was not in error, and its exclusion is not grounds for a new trial.

Defendants also argue that Riggins' internal institution RIB ruling which arose out of the incident should have been admitted as character evidence. In ruling upon the Motions *in Limine*, the Court excluded this evidence, but ruled that it could be used at trial solely for impeachment. (Doc. 157) The Court determined that the group of Riggins' RIB records were not relevant.[2] The Court also finds that like the assault conviction, the probative value of the RIB ruling is substantially outweighed by the danger of unfair prejudice. Therefore, the exclusion of this RIB record was not in error, and its exclusion is not grounds for a new trial.

Next, Defendants argue that they should have been permitted to introduce evidence of "what 'J-block' really is and the type of persons that it houses." However, this Court

---

[2]Similarly, the Court granted Defendants' Motion *in Limine* and excluded the Excessive Force Committee's finding against Defendants and reports showing a declination of representation of Defendants.

determined that to reference J-Block's inmates as assaultive and predatory would be extremely prejudicial, and have little probative value. The Court ruled orally before trial that references to J-Block could include explaining that the inmates in J-Block were kept in a controlled situation and celled there for security reasons, but that references to J-Block inmates as assaultive and/or predatory would not be permitted. The Court finds that the exclusion to references to J-Block's inmates as assaultive and predatory was not in error, and its exclusion is not grounds for a new trial.

Defendants also raise the issue of their own personnel files, but the Court's docket indicates that it was Plaintiff who attempted to offer Exhibits PX 1022, 1023 and 1024 (personnel records for the Defendants) and the Court would not allow Plaintiff to introduce these exhibits at trial. (Doc. 157)

Based on the foregoing, the Defendants' Motion for a New Trial is DENIED.

## II.    CONCLUSION

The Court finds that viewing the evidence in a light most favorable to Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, there was a genuine issue of material fact for the jury, and reasonable minds could have come to a conclusion other than that in favor of Defendants.

The Court also finds that Defendants have not shown prejudice resulting from the exclusion of the criminal conviction, RIB records, and a description of J-block prisoners as an assaultive and predatory.

Therefore, the Court hereby **DENIES** Defendants Forrest Hunt and Jerry Wells' Motion for Judgment Not Withstanding the Verdict and Motion for New Trial (Doc. 173).

**IT IS SO ORDERED.**

                                          */s/ Michael R. Barrett*
                                          MICHAEL R. BARRETT, Judge
                                          United States District Court